Frederic R. OAKLEY, Plaintiff-Co-Appellant,

v.

FIREMAN'S FUND OF WISCONSIN and Affiliated Carriage Systems, Inc., Defendants-Respondents,

DANE COUNTY DEPT. OF SOCIAL SERVICES, Meriter Hospital, Inc., Defendants,

AMERICAN FAMILY MUTUAL INSURANCE CO., Defendant-Appellant.†

Court of Appeals

*No. 89-1723. Oral argument February 7, 1990.—Decided June 14, 1990.*

(Also reported in 459 N.W.2d 461.)

†Petition to review granted.

For the defendant-appellant American Family Mutual Insurance Company the cause was submitted on the briefs of *American Family Mutual Insurance Company* by *Lawrence E. Classen,* of Madison. Oral argument by *Lawrence E. Classen.*

For the plaintiff-co-appellant Frederic R. Oakley the cause was submitted on the briefs of *Louderman, Hayes, Van Camp, Priester, Strother & Schwartz, S.C.* by *David J. Schwartz,* of Madison. Oral argument by *David J. Schwartz.*

For the defendants-respondents Fireman's Fund of Wisconsin and Affiliated Carriage Systems, Inc. the cause was submitted on the briefs of *Axley Brynelson* by

*Bradley D. Armstrong* and *Michael S. Anderson,* of Madison. Oral argument by *Michael S. Anderson.*
Before Eich, C.J., Gartzke, P.J., Sundby, J.

GARTZKE, P.J. American Family Mutual Insurance Company and its insured, Frederic Oakley, appeal from an order declaring that American Family has no subrogation rights against Fireman's Fund of Wisconsin and its insured, Affiliated Carriage Systems, Inc. Oakley was hurt in a multi-vehicle accident involving two other motorists. One motorist was uninsured. The other was Affiliated's employee, and we refer to him as the insured motorist. Oakley's policy with American Family contained uninsured motorist coverage. American Family paid Oakley on the basis of that coverage and now claims subrogation rights against the insured motorist and Fireman's Fund. The uninsured motorist and the insured motorist are joint tortfeasors as to Oakley.

The issues are whether: (1) American Family's uninsured motorist policy grants subrogation rights against the insured motorist; (2) sec. 632.32(4)(a)3, Stats., grants such rights;[1] and (3) Oakley is entitled to contribution toward his attorney's fees from any amount American Family collects from the insured motorist.

We conclude that the policy grants American Family subrogation rights against the insured motorist. We do not reach the statutory question. Oakley is entitled to contribution toward his attorney's fees from the amount American Family recovers on its subrogation

---

[1]Section 632.32(4)(a)3, Stats., provides: "Insurers making payment under the uninsured motorist coverage shall, to the extent of the payment, be subrogated to the rights of their insureds."

claim. We reverse the order and remand with directions to enter an order consistent with this opinion.

American Family's policy provides, "If we [American Family] pay under this policy, we are entitled to all the rights of recovery of the person to whom payment was made against *another*. But, our right to recovery will apply only after that person has been fully compensated for the loss." [Emphasis added.]

Before trial, American Family paid $50,000 to Oakley, the limit under its uninsured motorist coverage. The jury apportioned causal negligence five percent to Oakley, forty-five percent to the uninsured motorist, and fifty percent to the insured motorist.

The parties stipulated to several matters. First, after reduction for his five-percent negligence, Oakley incurred $100,000 in damages. Second, on behalf of the insured motorist, Fireman's Fund would pay $50,000 (fifty percent of his damages) to Oakley immediately. Third, the parties would request a declaration of American Family's right to recover from the insured motorist. Fourth, the parties would petition for a declaration of Oakley's right to contribution toward his attorney's fees from American Family if it recovered on its subrogation claim.

The trial court held that American Family's policy granted it no rights against the insured motorist. It reasoned that the word "another" in American Family's subrogation clause refers only to the uninsured motorist. As support for that proposition, the court noted that Oakley signed a release that entitled American Family to the proceeds from any settlement received from the uninsured motorist. It cited *Cunningham v. Metropolitan Life Ins. Co.*, 121 Wis. 2d 437, 450, 444, 360 N.W.2d 33, 39, 36–37 (1985), for the propositions that policy ambiguities are resolved against the insurer

and in favor of the insured, including ambiguities in subrogation clauses, and that the purpose of subrogation is to prevent unjust enrichment. It believed that the uninsured motorist was unjustly enriched when American Family paid Oakley under the uninsured motorist coverage. The court concluded that American Family had no subrogation rights against the insured motorist and did not reach the attorney's fee issue.

The trial court read the subrogation clause too narrowly. The clause entitles American Family to "all the rights of recovery . . . against another" if the person to whom American Family made payment has been fully compensated. American Family paid Oakley, and but for his attorney fees, Oakley has been fully compensated for his $100,000 in damages. American Family simply steps into Oakley's shoes vis-a-vis the uninsured and insured motorists. *See Waukesha County v. Johnson,* 107 Wis. 2d 155, 160, 320 N.W.2d 1, 3 (Ct. App. 1982) ("[s]ubrogation puts one to whom a right does not belong in the position of the owner of that right").

A policy provision is ambiguous only if reasonable persons can read it differently. *Hartland Cicero Mut. Ins. Co. v. Elmer,* 122 Wis. 2d 481, 487, 363 N.W.2d 252, 255 (Ct. App. 1984). We decide whether a provision is ambiguous without giving weight to the trial court's view. *Hemerly v. American Fam. Mut. Ins. Co.,* 127 Wis. 2d 304, 307, 309-10, 379 N.W.2d 860, 862-63 (Ct. App. 1985). We give the words in the provision their usual and ordinary meaning, and we may locate that meaning in a dictionary. *Lawver v. Boling,* 71 Wis. 2d 408, 414, 238 N.W.2d 514, 517 (1976).

The pronoun "another" as defined in *Webster's Third New International Dictionary* 89 (1976), has

three meanings, the most pertinent of which is: "2: one other than oneself . . .; one that is different, separate, or in contrast to the first or present one." Thus, the pronoun "another" in the subrogation provision before us means that American Family is entitled to all the rights of recovery of the person to whom payment was made against any "one that is different, separate, or in contrast to the first" person, *i.e.*, the person to whom American Family made payment. In short, American Family is entitled by the unambiguous terms of the subrogation clause to all the rights of recovery of the person to whom it made payment—here Oakley, its insured—against any other person.

Oakley has the right to recover his entire damages from either the uninsured or insured motorists, since they are joint tortfeasors and jointly and severally liable to him. *Bielski v. Schulze,* 16 Wis. 2d 1, 6, 114 N.W.2d 105, 107 (1962). His uninsured motorist coverage does not alter that right. His damages are stipulated at $100,000. He is therefore entitled to recover his entire damages, $100,000, from the insured motorist and its insurer, Fireman's Fund. Fireman's Fund paid him $50,000. American Family paid him $50,000 under the uninsured motorist coverage. We hold that the policy's subrogation clause gives to American Family Oakley's right to collect the remaining $50,000 from the insured motorist.

We reject the trial court's reasoning. The rule that a policy is strictly construed in favor of the insured is inapplicable. That rule leads nowhere, since Oakley in this case takes the same position as American Family regarding the subrogation clause. Nor does our holding that American Family is subrogated against the insured motorist conflict with subrogation's purpose to prevent

unjust enrichment. The uninsured motorist will not be unjustly enriched by American Family's recovery. His position remains unchanged. No payments were or will be made to him. He has not been and will not be absolved of his liability to the other joint tortfeasor or to American Family. The insured motorist—the other joint tortfeasor—and his insurer would be unjustly enriched if permitted to escape liability. Oakley's release to American Family is consistent with our holding.

Oakley and American Family argue in the alternative that sec. 632.32(4)(a)3, Stats., grants American Family subrogation rights against joint tortfeasors. Since we hold that American Family has a claim under its subrogation clause against the insured motorist, we need not reach the statutory issue. *See Cunningham,* 121 Wis. 2d at 445–46, 360 N.W.2d at 37 (court gives effect to express subrogation clause before considering whether policy is one of investment or indemnity).

Oakley argues that he is entitled to pro rata contribution toward his costs of collection, his attorney's fees incurred in establishing the insured motorist's liability to him and thus to American Family by subrogation. He notes that American Family benefits from the action he brought against the insured motorist. If he had not brought the action, American Family would recover none of its uninsured motorist payment.

In Wisconsin, if "the contract . . . contains no language to the contrary, the normal rule of subrogation applies and the subrogee [insurer] has no right to share in the fund recovered from the tort-feasor until the subrogor [insured] is made whole." *Garrity v. Rural Mut. Ins. Co.,* 77 Wis. 2d 537, 546–47, 253 N.W.2d 512, 516 (1977). As in *Garrity,* the contract between Oakley and American Family contains no language contrary to the

rule. Indeed, since it provides that American Family's "right to recovery will apply only after [the insured] has been fully compensated for the loss," the policy is consistent with the "make whole" principle recognized by the *Garrity* court.[2]

The *Garrity* court construed a subrogation clause in a standard fire insurance policy but based its decision on "the substantive common law rights of the insured." *Id.* at 540–41, 253 N.W.2d at 513–14. In *Rimes v. State Farm Mut. Auto. Ins. Co.,* 106 Wis. 2d 263, 272, 316 N.W.2d 348, 353 (1982), the supreme court applied *Garrity* to liability policy subrogation clauses, saying: "It appears clear that, under Wisconsin law as recapitulated in *Garrity,* one who claims subrogation rights . . . is barred from any recovery unless the insured is made whole."

Neither the *Garrity* court nor the *Rimes* court had before it the question whether the "make whole" rule is a "net make whole" rule which permits the insured to recover its legal expenses. However, the *Garrity* court, 77 Wis. 2d at 543, 253 N.W.2d at 515, quoted with approval from *Couch on Insurance* sec. 61.61 (2d ed. 1968) (emphasis added):

> In contrast with the situation in which the insurer has not discharged its obligation in full, the insurer may in a given case have made the full payment required of it by its contract of insurance but this amount is not adequate to indemnify the insured in full. In such an instance, it has been held, in absence of waiver to the contrary, that no right of

---

[2]The clause at issue in *Garrity* read: "This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company." *Garrity,* 77 Wis. 2d at 540, 253 N.W.2d at 513.

subrogation against the insured exists upon the part of the insurer where the insured's actual loss exceeds the amount recovered from both the insurer and the wrongdoer, *after deducting costs and expenses.* In other words, the insurer has no right as against the insured where the compensation received by the insured is less than his loss.

The *Garrity* court also cited *Washtenaw Mut. Fire Ins. Co. v. Budd,* 175 N.W. 231 (Mich. 1919), which included the insured's attorney's fees and costs as part of the insured's loss. *Garrity,* 77 Wis. 2d at 542, 253 N.W.2d at 514.[3]

---

[3]Several jurisdictions apply a "make whole" rule permitting a subrogor to recover *all* of its reasonable costs and expenses before sums may pass to the subrogee. *Shawnee v. Fire Ins. Co. v. Cosgrove,* 116 P. 819 (Kan. 1911); *Washtenaw, supra; Flor v. Buck,* 248 N.W. 743 (Minn. 1933); *Skauge v. Mountain States Tel. & Tel. Co.,* 565 P.2d 628 (Mont. 1977); *Coburn v. Rogers,* 158 A.2d 302 (N.H. 1960); *Sun Ins. Office v. Hohenstein,* 220 N.Y.S. 386 (N.Y. Mun. Ct. 1927); *Newcomb v. Cincinnati Ins. Co.,* 22 Ohio St. 382, 10 Am. Rep. 746 (1872); *Ortiz v. Great Southern Fire & Cas. Ins. Co.,* 597 S.W.2d 342 (Tex. 1980).

Other jurisdictions apply a "fund doctrine," by which a subrogor recovers a pro rata share of its reasonable expenses. *Blue Cross and Blue Shield of Ala. v. Freeman,* 447 So. 2d 757 (Ala. Civ. App. 1983); *Washington Fire & Marine Insurance Co. v. Hammett,* 377 S.W.2d 811 (Ark. 1964); *Phillips v. Liberty Mutual Insurance Company,* 253 A.2d 502 (Del. 1969); *Forsyth v. Southern Bell Telephone & Telegraph Co.,* 162 So. 2d 916 (Fla. Dist. Ct. App. 1964); *United Services Automobile Association v. Hills,* 109 N.W.2d 174 (Neb. 1961); *Montefusco Excavating v. County of Middlesex,* 414 A.2d 961 (N.J. 1980); *Ridenour v. Nationwide Mutual Insurance Company,* 541 P.2d 1377 (Or. 1975); *O'Neal v. Legg,* 764 P.2d 246 (Wash. Ct. App. 1988). Wisconsin approved the fund doctrine in *State Farm Mut. Automobile Ins. Co. v. Geline,* 48 Wis. 2d 290, 179 N.W.2d 815 (1970), before *Garrity* was decided.

Oakley has not asked for all of his fees in establishing the insured motorist's liability to him and therefore to American Family via its subrogation claim. He argues only that "American Family seeks subrogation as to 50% of the verdict and settlement. They therefore must bear fifty percent (50%) of the collection costs incurred by plaintiff to obtain those sums." We conclude that the "make whole" rationale established by *Garrity* and *Rimes* entitles Oakley to the fees he seeks.[4] American Family implies in its reply brief that Oakley's counsel is attempting to claim a fee. We emphasize that it is Oakley, not his counsel, who must be made whole. We state no opinion on whether a subrogor's counsel may directly claim a fee from a subrogee.

We reverse the order of the trial court and remand the action. We direct the court to enter an order declaring that: (1) American Family has the right to recover $50,000 from Fireman's Fund and (2) Oakley has the right to recover from that amount one half of those costs and attorney's fees he reasonably and necessarily incurred in establishing Fireman's liability.

*By the Court.*—Order reversed and cause remanded with directions.

SUNDBY, J.   *(concurring in part, dissenting in part).* There are more things in the majority's opinion than are dreamt of in its philosophy. Although the majority opinion does not mention the American Rule, its "net-make-whole" construct creates an exception to the traditional rule in America that a litigant pays his or her own attorney fees. *See Watkins v. LIRC,* 117 Wis. 2d 753, 758, 345 N.W.2d 482, 485 (1984). "[D]epartures

---

[4]Because Oakley does not argue he is entitled to 100% of his reasonable fees, we do not decide that question.

from the American rule are narrowly drawn exceptions."
*Teachers' Ass'n v. School Directors,* 147 Wis. 2d 791,
797, 433 N.W.2d 669, 672 (Ct. App. 1988). In this case,
Oakley collects fifty percent of his attorney fees from
American Family, and may have collected 100 percent,
had he argued that he was entitled to it.

This is not the proper case in which to adopt a "net-
make-whole" rule, for two reasons. First, the insurance
contract between American Family and Oakley does not
permit the application of such a rule. Second, the parties
have concentrated on the principal issue in the case, *i.e.,*
whether American Family has *any* subrogation rights,
and have not directed their briefing attention to this
issue.

Oakley's policy with American Family provides:

> If we pay under this policy, we are entitled to all
> the rights of recovery of the person to whom payment
> was made against another. But, our right to recovery
> will apply only after that person has been fully
> compensated for the loss . . .. When we pay damages
> under this policy to a person who also collects from
> another, the amount collected from the other shall be
> repaid to us to the extent of our payment.[1]

The majority cites *Garrity v. Rural Mut. Ins. Co.,* 77
Wis. 2d 537, 253 N.W.2d 512 (1977) to support the "net-
make-whole" rule. However, the *Garrity* court applied
the normal rule of subrogation, *"because the contract*

---

[1]The parties stipulated that this provision was included in
the policy in effect on the day of the accident, September 24,
1987. However, that policy indicates that it was revised January
1988. It appears that the policy which was in effect on the date of
the accident is attached to Oakley's affidavit. That policy does
not include the "But" sentence. I reach the same result under
either policy.

*here contains no language to the contrary . . .." Id.* at 546-47, 253 N.W.2d at 516 (emphasis added). The *Garrity* court looked first to the contract between the insured and the insurer. Here, the majority says that the contract between Oakley and American Family contains no language contrary to the usual subrogation rule. It states that "[i]ndeed, since [the contract] provides that American Family's 'right to recovery will apply only after [the insured]' has been fully compensated for the loss,' the policy is consistent with the 'make whole' principle recognized by the *Garrity* court." Majority op. at 84.

The *Garrity* court, however, did not define "loss" to include the insured's attorney fees and costs of litigation. In fact, the standard fire insurance policy construed in *Garrity*,[2] made clear that "loss" was limited to what it would cost to repair and replace the damaged or destroyed property. Standard fire insurance policy (intro. par.). The "make-whole" principle of *Garrity* is thus limited to the insured's *direct* loss and does not include recoupment of the insured's cost of litigation and attorney fees.

Contrary to the majority, I conclude that American Family's contractual right to recovery applies to Oakley's damages judgment before deducting his attorney fees and costs of litigation. My conclusion is consistent with the usual treatment of such fees and costs in American law. *See* R. Keeton & A. Widiss, *Insurance Law—A Guide to Fundamental Principles, Legal Doctrines and Commercial Practices,* sec. 3.10(3) at 239 (1988).

My conclusion is also consistent with Oakley's policy with American Family. "Loss" is not defined in that

---

[2]Section 203.01, Stats. (1969), required the insurance commissioner to keep on file printed forms in blank of a standard fire insurance policy. The standard policy was annexed to the statute.

part of the contract which provides uninsured motorist coverage. It is, however, defined under Part IV dealing with car damages. There, "loss" "means direct and accidental loss of or damage to your insured car and its equipment." This definition clearly does not include attorney fees and costs of litigation. It would be quite anomalous to construe "loss" to mean one thing in one part of the policy and something else in another part of the policy, at least in the absence of a definition.

In any event, we should not decide an abstract question of law. Whether the doctrine of subrogation requires application of a "net-make-whole" rule is an interesting theoretical question[3] but irrelevant here. This case should be decided under the contract between the parties.[4] Further, adopting the "net-make-whole" rule represents a dramatic change in subrogation law, a change which should not be made without considering the public policy implications. If that change is made, it should be made by the supreme court upon thorough briefing of the issues.

---

[3]Keeton and Widiss state that the American-Rule approach "does not comport with the generally accepted [subrogation] goal of providing full indemnification for the injured person." *Insurance Law*, sec. 3.10(3) at 239.

[4]When American Family settled with Oakley under the uninsured motorist coverage clause of its contract, Oakley signed a release which stated in part:

> I agree to perform and comply fully with the following agreements as a condition of this release:
>
> . . ..
>
> c.   I will hold in trust for the benefit of the Company all rights of recovery, to the extent of this payment, I have against another because of the damages which are the subject of this claim.

I do not rely on the release because the parties do not argue its effect. I would ask the parties to brief this issue.

89

For these reasons, I respectfully dissent from that part of the majority opinion which fashions a "net-make-whole" rule for Oakley's benefit. I concur with the majority's conclusion that American Family has subrogation rights.