Joann LIGHTCAP, Plaintiff-Appellant-Petitioner,

v.

STEENBERG HOMES, INC. and First Financial Savings Association, Defendants-Respondents.

Supreme Court

*No. 89-1248. Argued January 24, 1991.—Decided March 28, 1991.*

(Also reported in 466 N.W.2d 904.)

609

For the plaintiff-appellant-petitioner there was a brief by *Archie E. Simonson,* Madison and oral argument by *Archie E. Simonson.*

For the defendant-respondent, Steenberg Homes, Inc., there was a brief by *Elizabeth V. Pavlick* and *Sager, Pavlick & Wirtz, S.C.,* Fond du Lac and oral argument by *Elizabeth V. Pavlick.*

For the defendant-respondent, First Financial Savings Association, there was a brief by *David G. Shafton,* Stevens Point and oral argument by *David G. Shafton.*

CALLOW, WILLIAM G., J.   This is a review of an unpublished decision of the court of appeals, which affirmed a judgment of the circuit court for Dane County, Judge Susan Steingass. The sole issue in this case is whether the circuit court properly denied an award of attorney fees to the plaintiff-appellant-petitioner Joann Lightcap, who had incurred these fees in litigation which resulted in a judicial determination that she had revoked her acceptance of a mobile home which she had purchased from the defendant-respondent Steenberg Homes, Inc. (Steenberg). We conclude that attorney fees are not recoverable in such an action.

The relevant facts follow. In April 1987, Lightcap purchased a mobile home from Steenberg for $21,902.50. Lightcap received a one-year written warranty[1] from the

---

[1]The Manufactured (Mobile) Home Warranty provides, in part:

> The manufactured *(mobile)* home identified above complies with the manufactured *(mobile)* home standards prescribed by the Secre-

610

manufacturer, Liberty Homes, Inc. (Liberty), pursuant to sec. 218.14(1), Stats.[2] (1987–88),[3] in which it war-

tary of Housing and Urban Development that were in effect at the time the manufactured *(mobile)* home was manufactured and the manufactured *(mobile)* home is free from defects in material or workmanship. This warranty [sic] shall obligate the manufacturer to take appropriate corrective action within a reasonable period of time in instances of nonconformity to such standards and/or instances of defects in materials or workmanship which become evident within 1 year from the date of delivery of the manufactured *(mobile)* home and as to which the Purchaser(s) or his *(their transferee(s))*, give written notice to the manufacturer not later than 1 year and 10 days after the date of delivery set forth above. Such written notice shall be delivered to the manufacturer-warrantor at the address set forth herein. This warranty shall not obligate the manufacturer to correct defects or considtions [sic] in the manufactured *(mobile)* home that may occur as a result of abnormal usage or a lack of proper maintenance.

[2]Section 218.14(1), Stats., provides:

**Warranty and disclosure (1)** A one-year written warranty is required for every new primary housing unit sold or leased by a mobile home manufacturer, dealer or salesperson in this state, and for every new primary housing unit sold by any person who induces a resident of the state to enter into the transaction by personal solicitation in this state or by mail or telephone solicitation directed to the particular customer in this state. The warranty shall contain the following terms:

(a)   That the primary housing unit meets those standards prescribed by law or administrative rule of the department of industry, labor and human relations, which are in effect at the time of its manufacture.

(b)   That the primary housing unit is free from defects in material and workmanship and is reasonably fit for human habitation if it receives reasonable care and maintenance as defined by rule of the department of industry, labor and human relations.

(c) 1.   That the primary housing unit manufacturer and dealer shall take corrective action for defects which become evident within one year from the delivery date and as to which the primary housing unit owner has given notice to the manufacturer or dealer not later than one year and 10 days after the delivery date and at the address set forth in the warranty; and that the primary housing unit manu-

611

ranted that the mobile home was free from defects in material and workmanship. This warranty also obligated the manufacturer and dealer of the mobile home to correct within a reasonable time any nonconformity to the Department of Housing and Urban Development (HUD) standards or defects in materials or workmanship which became evident within one year of delivery of the mobile home.

After moving into the mobile home, Lightcap experienced many problems with it, such as irregularities in the floor, water spots on the wall and other water leakage, windows and walls separating from the frame, bending and twisting of door and window frames, twisting of ceiling panels, unusual rippling of the roof, problems

facturer and dealer shall make the appropriate adjustments and repairs, within 30 days after notification of the defect, at the site of the primary housing unit without charge to the primary housing unit owner. If the dealer makes the adjustment, the manufacturer shall fully reimburse the dealer.

2. If a repair, replacement, substitution or alteration is made under the warranty and it is discovered, before or after expiration of the warranty period, that the repair, replacement, substitution or alteration has not restored the primary housing unit to the condition in which it was warranted except for reasonable wear and tear, such failure shall be deemed a violation of the warranty and the primary housing unit shall be restored to the condition in which it was warranted to be at the time of the sale except for reasonable wear and tear, at no cost to the purchaser or his assignee notwithstanding that the additional repair may occur after the expiration of the warranty period.

(d) That if during any period of time after notification of a defect, the primary housing unit is uninhabitable, as defined by rule of the department of industry, labor and human relations, that period of time shall not be considered part of the one-year warranty period.

(e) A list of all parts and equipment not covered by the warranty.

[3]All statutory references are to the 1987–88 Wisconsin Statutes, unless otherwise annotated.

with the heating system and other structural defects. Lightcap contacted Steenberg to correct the problems, and numerous attempts were made both by Steenberg and Liberty to correct them, at no cost to Lightcap. In August 1987, Lightcap contacted a building inspector from the Department of Industry, Labor and Human Relations (DILHR), who inspected the mobile home in October 1987. DILHR then issued its findings of fact on twenty-nine different complaints, ordering the manufacturer to correct several defects that had not been previously resolved. DILHR did not refer Lightcap's complaint to the attorney general for enforcement.

On March 31, 1988, Lightcap wrote to Steenberg, revoking her acceptance of the mobile home, pursuant to sec. 402.608, Stats., and demanding the purchase price of the mobile home plus costs. She alleged that the defects in the mobile home had not been corrected. Steenberg did not satisfy Lightcap's demanded payment. On June 8, 1988, Lightcap commenced an action against the defendants-respondents, seeking to enforce her revocation and recover her damages. In her complaint, Lightcap charged that Steenberg had breached its express and implied warranties, and that because the mobile home defects had not been corrected, its value was substantially impaired, and she was entitled to revoke her acceptance of the mobile home. She requested attorney fees under sec. 218.17(3), Stats., in her requested damages of $20,200.00.

The circuit court held, after a bench trial, that Lightcap was entitled to revoke her acceptance of the mobile home, because the substantial defects in the home rendered it nonconforming and substantially impaired its value to her. In its award of damages, the circuit court refused to allow attorney fees because Lightcap was not entitled to attorney fees under the

breaches of warranty and revocation statutes, secs. 402.608, .714, .715, Stats.

The court of appeals affirmed the circuit court on the grounds: (a) that sec. 402.608, Stats., did not provide for attorney fees, (b) that attorney fees were not recoverable under sec. 402.715 because they were not "incidental or consequential" damages, and (c) that noncompliance with the written warranty did not constitute a violation of sec. 218.14, Stats. This court granted Lightcap's petition for review pursuant to sec. (Rule) 809.62, Stats.

Sales of mobile homes in Wisconsin are governed by the Uniform Commercial Code—Sales (UCC), sec. 402.101–.725, Stats., and by subchapter VI of chapter 218, sec. 218.10–.17, Stats. A mobile home is a "commercial unit," sec. 402.105(1)(a), and the sale of a mobile home is a sale of "goods," sec. 402.105(1)(c), and is within the scope of the UCC. Section 402.102. A buyer may recover reasonable damages for the breach of an express or implied warranty under the UCC. Specifically, the buyer may recover the difference "between the value of the goods accepted and the value they would have had if they had been as warranted." Section 402.714(2). Incidental and consequential damages under sec. 402.715 may also be recovered when a breach of warranty occurs. Section 402.714(3). Attorney fees are not recoverable in such actions, as attorney fees do not represent incidental or consequential damages. *Murray v. Holiday Rambler, Inc.,* 83 Wis. 2d 406, 436, 265 N.W.2d 513 (1978).

Additionally, if a buyer accepts a commercial unit and its nonconformities are not seasonably cured, the buyer may revoke his or her acceptance of the unit under

614

the conditions of sec. 402.608, Stats.[4] In this case, the circuit court held that Lightcap could revoke her acceptance, as the nonconformities of the mobile home substantially impaired its value to her and the defects had not been seasonably cured. The circuit court held that Lightcap was entitled to a return of the sums she paid and any consequential damages, set off by her use of the mobile home, as measured by the reasonable rental value of the mobile home, but did not award attorney fees.

Attorney fees are generally not recoverable unless authorized by a statutory or contractual provision. *Murray,* 83 Wis. 2d at 435. The critical inquiry in determining if Lightcap is entitled to attorney fees, therefore is: Is there a statutory or contractual provision allowing

---

[4]Section 402.608, Stats., provides:

**Revocation of acceptance in whole or in part. (1)** The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:

    (a)   On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

    (b)   Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

**(2)**   Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

**(3)**   A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

Note: Revocation of acceptance is a remedy available in addition to an action for breach of warranty. *See* Official UCC Comment 1, sec. 402.608. ("[T]he buyer is no longer required to elect between revocation of acceptance and recovery of damages for breach. Both are now available to him.")

Lightcap to recover attorney fees in this case? Unless such a provision exists, Lightcap is not entitled to attorney fees.

In her complaint, Lightcap does not contend that she has a contractual provision existing with Steenberg or Liberty that would entitle her to attorney fees. Lightcap contends that she is entitled to attorney fees under a statutory provision, sec. 218.17(3), Stats. Section 218.17(3) provides:

> [n]othing in this subchapter prohibits the bringing of a civil action against a mobile home manufacturer, dealer or salesperson by an aggrieved customer. If judgment is rendered for the customer based on an act or omission by the manufacturer, dealer or salesperson, which constituted a violation of this subchapter, the plaintiff shall recover actual and proper attorney's fees in addition to costs otherwise recoverable.

If Steenberg's acts or omissions constituted a violation of subchapter VI (sec. 218.10–.17), Lightcap would be entitled to attorney fees in addition to her other damages. Lightcap claims that she is entitled to attorney fees under sec. 218.17(3) because, in failing to restore the mobile home to the condition for which it was warranted, Steenberg violated sec. 218.14(1)(c).

■■
Lightcap's claim for attorney fees rests on an interpretation of sec. 218.14(1)(c), Stats. The construction of a statute is a question of law, and this court need not defer to the circuit court or the court of appeals when deciding a question of law. *Milwaukee Met. Sewerage Dist. v. DNR,* 126 Wis. 2d 63, 71, 375 N.W.2d 648 (1985). In construing a statute, the court first must

examine the language of the statute itself. *Id.* Section 218.14(1)(c)2 provides, in part:

> **Warranty and disclosure. (1)** A one-year written warranty is required . . .. The warranty shall contain the following terms:
>
>            . . ..
>
>      (c)  . . .2. If a repair . . . is made under the warranty and it is discovered . . . that the repair . . . has not restored the [mobile home] to the condition in which it was warranted . . . such failure shall be deemed a violation of the warranty . . ..

While this language, standing alone, is clear and unambiguous, it is rendered ambiguous by its interaction with sec. 218.17(3), Stats. *See State v. White,* 97 Wis. 2d 193, 198, 295 N.W.2d 346 (1980). It is unclear whether a "violation of the warranty" sec. 218.14(1)(c)1, 2, Stats., is a "violation of this subchapter" sec. 218.17(3). Because of the incongruity of the statutes, we will examine the "scope, subject matter, and object of the statute[s] to discern the legislative intent." *See Pulsfus Poultry Farms, Inc. v. Town of Leeds,* 149 Wis. 2d 797, 806, 440 N.W.2d 329 (1989).

We conclude that a "violation of the warranty" is not a "violation of this subchapter" for two reasons. First, we conclude that subchapter VI was enacted to ensure that proper warranties were given to mobile home purchasers, and to ensure that these purchasers were aware of their rights and responsibilities with regard to those warranties. Subchapter VI *Mobile Home Dealers* was created by Chapter 116, Laws of 1973. This law created secs. 218.14 and 218.17, Stats. among others, all

of which related to "licensing of mobile home manufacturers, warranties on new mobile homes, granting rule-making authority and providing a penalty." Chapter 116, Laws of 1973. Section 218.14 is titled "Warranty and Disclosure" and addresses required warranties on new mobile homes. This section was enacted not to require the manufacturer, dealer or salesperson to comply with the written warranty (this function is provided by other statutory sections), but rather to require that new mobile homes have a written warranty, and to disclose to the customer his or her rights and responsibilities under the warranty. Subsection (1) specifies the information which the manufacturer, dealer or salesperson must disclose to customers through a written warranty. It is clear that sec. 218.14 was not enacted to provide a cause of action in the event of a breach of that written warranty.

Second, the legislature had the opportunity to explicitly include attorney fees as a remedy for a breach of warranty as it did under the automobile "lemon law," sec. 218.015, Stats., but did not do so. Section 218.015 was enacted in 1983, ten years after the mobile home statute (1983 Wisconsin Act 48). The language of that statute explicitly allows an award of attorney fees for a violation of that section. Section 218.015(2) contains requirements for automobile manufacturers, lessors and dealers to repair vehicles which do not conform to express warranties. Failing that, the manufacturer, lessor or dealer must replace the vehicle or refund the buyer's money under the provisions of sec. 218.015. This statute neither mandates that an express warranty be given, nor does it dictate the terms of the warranty, in contrast to sec. 218.14. Clearly, the manufacturer's failure to repair nonconformities of the vehicle, to replace the vehicle, or to refund the buyer's money constitutes a violation of sec. 218.015, and attorney fees are awardable. *See Chmill*

*v. Friendly Ford-Mercury,* 154 Wis. 2d 407, 453 N.W.2d 197 (Ct. App. 1990). Had the legislature intended sec. 218.14 to operate as a mobile home "lemon law," it could have drafted or amended its language to resemble that of sec. 218.015.

Section 218.17(3), Stats., provides for attorney fees when a manufacturer, dealer or salesperson fails to give the warranty required by sec. 218.14. We conclude that sec. 218.17(3) does not provide for attorney fees that a consumer incurs as a result of a violation of the required warranty itself. A cause of action in this case would only accrue under sec. 218.17(3), if Steenberg had failed to give an express written warranty, or had failed to include in its warranty to Lightcap the language required by sec. 218.14. Lightcap has not alleged that Steenberg committed such a violation.

Lightcap insists we award attorney fees for reasons of equity and fairness. She contends that attorney fees in cases such as these constitute a plaintiff's largest monetary expense, and without attorney fees, consumers will not be able to protect their interests. She cites language from *First Wisconsin Nat'l Bank v. Nicolaou,* 113 Wis. 2d 524, 335 N.W.2d 390 (1983): "[i]ndeed, the cost of legal representation will often exceed the recovery in a [Wisconsin Consumer Act] case. . . . The potential impact of these cases over the long run induces creditors to litigate them to the fullest. The result being that, in the absence of sufficient attorney fee awards, consumers will be financially unable to maintain meritorious claims." *Nicolaou,* 113 Wis. 2d at 539. While this case addressed the Wisconsin Consumer Act, chs. 421–27, Stats., the same rationale may apply to breach of warranty and revocation actions. Nonetheless, not only has the legislature failed to provide for attorney fees in these

UCC actions, we have explicitly refused to recognize them. *Murray,* 83 Wis. 2d at 436.

Neither party has argued the availability of attorney fees under the Magnuson-Moss Act. 15 U.S.C. secs. 2301–12 (1982). Therefore, we do not address the question of whether attorney fees under the Magnuson-Moss Act are awardable in this particular case.

In summary, we conclude that the circuit court did not err in denying attorney fees to Lightcap as damages in her action against Steenberg for breach of warranties and revocation of acceptance of a mobile home. Attorney fees are not allowable under the applicable UCC sections, nor are they applicable under sec. 218.17(3), Stats., as no violation of sec. 218.14 occurred.

*By the Court.*—The decision of the court of appeals is affirmed.

LOUIS J. CECI, J. (dissenting). I dissent and would award the petitioner actual and proper attorney's fees under sec. 218.17(3), Stats., because Steenberg violated a provision of subch. VI of ch. 218, Stats. Steenberg's failure to bring the mobile home into compliance with the warranty, after numerous attempts failed to do so, violated sec. 218.14(1)(c)2, Stats. Contrary to the majority's characterization of this action, the petitioner did not bring this action based upon a simple breach of warranty, by which I mean the sale of a nonconforming unit. Rather, the petitioner brought this action based upon the failure of Steenberg's repairs to bring the mobile home into compliance with the warranty. This distinction is crucial because it is the failure of the repairs to bring the mobile home into conformity with the warranty, not the need for the repairs, that violates

sec. 218.14(1)(c)2. Accordingly, I would reverse the decision of the court of appeals.