Frederic R. OAKLEY, Plaintiff-Co-Appellant,

v.

FIREMAN'S FUND OF WISCONSIN and Affiliated Carriage Systems, Inc., Defendants-Respondents,

DANE COUNTY DEPARTMENT OF SOCIAL SER-VICES and Meriter Hospital, Inc., Defendants,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant-Appellant-Petitioner.

Supreme Court

*No. 89-1723. Submitted on briefs April 24, 1991.—Decided June 19, 1991.*

(Also reported in 470 N.W.2d 882.)

For the defendant-appellant-petitioner there were briefs by *Colleen J. Reinke* and *American Family Mutual Insurance Company,* Madison.

For the plaintiff-co-appellant there was a brief by *David J. Schwartz* and *Louderman, Hayes, Van Camp, Priester, Strother & Schwartz, S.C.,* Madison.

There was an amicus curiae brief by *Scott G. Pernitz* and *Winner, Wixson & Pernitz,* Madison for Civil Trial Counsel of Wisconsin.

There was an amicus curiae brief by *Mark L. Thomsen* and *Cannon & Dunphy, S.C.,* Milwaukee for Wisconsin Academy of Trial Lawyers.

There was an amicus curiae brief by *Terry J. Booth* and *Fellows, Piper & Schmidt,* Milwaukee for Wisconsin Health Insurers.

LOUIS J. CECI, J. This case is before the court on a petition for review of a decision of the court of appeals, *Oakley v. Fireman's Fund,* 157 Wis. 2d 77, 459

N.W.2d 461 (Ct. App. 1990). The majority of the court of appeals (Sundby, J., concurring in part and dissenting in part) reversed an order of the circuit court for Dane county, Michael B. Torphy, Jr., Circuit Judge. The circuit court's order, in effect, denied Frederic R. Oakley's (Oakley) motion to recover attorney's fees from American Family Mutual Insurance Company (American Family).

One issue is presented by this review: whether an insured is entitled to a pro rata contribution toward his attorney's fees incurred in establishing a third party's liability to him and to his insurer by subrogation when the insurer participated in the action which established the third party's liability. We hold that an insured is not entitled to a contribution toward his attorney's fees from his insurer if his insurer participates in the action which establishes a third party's liability to the insurer by subrogation.

The facts relevant to this review are not in dispute. On September 24, 1987, Oakley was injured in a three-vehicle accident. One vehicle was driven by Oakley and insured by American Family. The driver of the second vehicle, James R. Freeman, was uninsured. The driver of the third vehicle, Warren Sproule, was an employee of the defendant Affiliated Carriage Systems, Inc. (Affiliated Carriage) and was insured by Fireman's Fund of Wisconsin (Fireman's Fund).

On January 12, 1988, Oakley collected $50,000.00 from American Family under his uninsured motorist policy and commenced this action against Affiliated Carriage and Fireman's Fund for damages he suffered in the collision.[1] American Family participated in the action and was represented by its own counsel. At trial, the jury

---

[1] Oakley named as parties defendant American Family, Dane County Department of Social Services, and Meriter Hospital due

apportioned causal negligence as follows: 5 percent to Oakley, 45 percent to Freeman (the uninsured motorist), and 50 percent to Sproule (an employee of Affiliated Carriage, Fireman's Fund's insured).

After verdict, the parties entered into a stipulation which provided in relevant part that Oakley incurred damages of $100,000.00 in the September 24, 1987, collision and that the parties would petition the circuit court for a declaration of American Family's right to subrogation from Fireman's Fund and Oakley's right to contribution toward his attorney's fees from American Family. By order filed July 27, 1988, the circuit court ruled that American Family was not entitled to subrogation from Fireman's Fund. Therefore, the circuit court did not decide whether Oakley had a right to contribution toward his attorney's fees from American Family.

Oakley and American Family appealed from the circuit court's order.[2] Oakley argued that he was entitled to a pro rata contribution[3] toward his attorney's fees from American Family because American Family benefited from the action he brought against Affiliated Carriage and Fireman's Fund. *Oakley,* 157 Wis. 2d at 83. The court of appeals agreed with Oakley after holding that American Family was entitled to subrogation from Fire-

to their potential subrogation interests in any damages Oakley recovered from Affiliated Carriage and Fireman's Fund.

[2]Since the court of appeals held that American Family was entitled to subrogation from Fireman's Fund and Fireman's Fund did not seek review of that part of the court of appeals decision, we do not discuss the portion of the court of appeals decision regarding same.

[3]In the case at bar, Oakley argued a pro rata contribution would be 50 percent, since his total damages were $100,000.00, and American Family was entitled to subrogation in the amount of $50,000.00. *Oakley,* 157 Wis. 2d at 86.

man's Fund. *Id.* at 79–80. The court of appeals reasoned that Oakley was entitled to attorney's fees from American Family because American Family is not entitled to subrogation until Oakley is made whole, and Oakley will not be made whole if attorney's fees are deducted from his recovery of $100,000.00 (the stipulated amount of Oakley's damages). *Id.* at 83–85 (citing *Garrity v. Rural Mutual Ins. Co.,* 77 Wis. 2d 537, 546–47, 253 N.W.2d 512 (1977); *Rimes v. State Farm Mutual Automobile Ins. Co.,* 106 Wis. 2d 263, 272, 316 N.W.2d 348 (1982); and 16 Couch, *Cyclopedia of Insurance Law,* sec. 61:61 (1968) [hereinafter *Couch*]).

American Family petitioned this court for review of the decision of the court of appeals, which we granted.

■

Application of the "make whole" doctrine of *Garrity* and *Rimes* to an undisputed set of facts is a question of law which we review independently and without deference to the decisions of lower courts. *Blue Cross v. Fireman's Fund,* 140 Wis. 2d 544, 548, 411 N.W.2d 133 (1987). Accordingly, we will review the issue raised in this case without deference to the lower courts' decisions.

The gravamen of the court of appeals' holding is that Oakley will not be "made whole" if he must pay attorney's fees from his recovery. We disagree for two reasons. First, the court of appeals overlooked the provisions of sec. 803.03(2)(b), Stats., which provide that a subrogor (an insured) is only entitled to a contribution toward his attorney's fees if he represents the interests of the subrogee (the insurer). Second, the court of appeals misconstrued *Garrity* and *Rimes* in light of the American rule that each party bears his own attorney's fees.

Section 803.03(2)(b), Stats.,[4] provides that a party which has a claim based on subrogation (the subrogee) has three options. First, the subrogee may participate in the prosecution of the action. Second, the subrogee may agree to have his interest represented by the party who caused the joinder by signing a written waiver of the right to participate in the action which expresses consent to be bound by the judgment in the action. Third, the subrogee may move the court to dismiss the action with or without prejudice.

If the second option is chosen, the party that represents the interests of the subrogee and obtains a judgment favorable to the subrogee may be awarded reasonable attorney's fees by the court. *Id.* Section 803.03(2)(b) does not provide for an award of attorney's fees to the subrogor if the subrogee chooses any of the other options provided for in sec. 803.03(2)(b).

In the case at bar, the subrogee, American Family, chose the first option provided for by sec. 803.03(2)(b): it

---

[4]Section 803.03(2)(b), Stats., provides in relevant part as follows:

**803.03 Joinder of persons needed for just and complete adjudication . . ..**
 **(2)** Claims arising by subrogation, derivation and assignment . . ..
 **(b)** *Options after joinder.* Any party joined pursuant to par. (a) may 1. participate in the prosecution of the action, 2. agree to have his or her interest represented by the party who caused the joinder, or 3. move for dismissal with or without prejudice. If the party joined chooses to participate in the prosecution of the action, the party joined shall have an equal voice with other claimants in such prosecution. If the party joined chooses to have his or her interest represented by the party who caused the joinder, the party joined shall sign a written waiver of the right to participate which shall express consent to be bound by the judgment in the action . . .. A party who represents the interest of another party and who obtains a judgment favorable to such other party may be awarded reasonable attorneys fees by the court. . . .

fully participated in the prosecution of the action by its own counsel from the filing of the pleadings through the briefing before this court. There is no indication that American Family chose the second option provided for by sec. 803.03(2)(b), the only option under which Oakley would be entitled to a contribution toward his attorney's fees. The record shows that American Family did not agree to have its interests represented by Oakley, nor did American Family sign a written waiver of its right to participate in the action which expressed consent to be bound by the judgment in the action.

Rather, as previously discussed, the record shows that American Family actively participated in all aspects of the litigation at the trial and appellate levels by its own counsel. Accordingly, Oakley is not entitled to attorney's fees as if American Family chose to have its interests represented by Oakley.

The court of appeals overlooked the provisions of sec. 803.03(2)(b) and reasoned that Oakley is entitled to a pro rata contribution toward his attorney's fees under the principle established in *Garrity* and *Rimes* that a subrogee is not entitled to share in funds recovered from a tort-feasor until the subrogor is made whole. *Oakley,* 157 Wis. 2d at 83. To support its interpretation of *Garrity* and *Rimes,* the court of appeals quoted from *Couch,* sec. 61:61,[5] which provides in relevant part that:

> 'it has been held, in absence of waiver to the contrary, that no right of subrogation against the insured exists upon the part of the insurer where the insured's actual loss exceeds the amount recovered from both the insurer and the wrongdoer, *after deducting costs and expenses.*'

---

[5]This section was renumbered in 1983 (2d ed.) to 61:64.

*Id.* at 84–85 (emphasis added by the court of appeals; footnotes omitted).

Neither *Couch, Garrity,* nor *Rimes* supports the court of appeals decision. To support its assertion that a subrogor is entitled to deduct his costs and expenses from the subrogee's interest in any recovery, *Couch* only cites cases in which the subrogee did not participate in the prosecution of the action against the tort-feasor(s).[6]

---

[6]*See, e.g., Washtenaw Mutual Fire Ins. Co. v. Budd,* 208 Mich. 483, 175 N.W. 231 (1919); and *Propeck v. Farmers' Mutual Ins. Ass'n,* 65 S.W.2d 390 (Tex. Ct. App. 1933).

The cases cited to us by the *amicus* brief of the Wisconsin Academy of Trial Lawyers are also distinguishable from the case at bar because the insurer in those cases did not participate in the prosecution of the action against the tort-feasor. *See, e.g., Michigan Mutual Ins. Co. v. Shaheen,* 101 Mich. App. 761, 300 N.W.2d 599 (1980) (insurer commenced subrogation action against the insured and the insured's counsel after the insured obtained a settlement from the tort-feasor in an action in which the insurer was not a party); *Skauge v. Mountain States Tel. & Tel. Co.,* 172 Mont. 521, 565 P.2d 628 (1977) (insurer did not participate in the prosecution of the action; rather, the insurer involuntarily became party to the action by virtue of the tort-feasor's third-party complaint after discovery and investigation had become substantially completed by the insureds' counsel); *Ortiz v. Great Southern Fire & Casualty Ins. Co.,* 597 S.W.2d 342, 344 (Tex. 1980) (holding that "*when an insurer does not assist in the collection of damages from the third party tortfeasor,* it must pay its share of the costs and expenses incurred in obtaining recovery from the third party, including attorney fees" (emphasis added)).

The cases cited by *Couch* and the *amicus* brief of the Wisconsin Academy of Trial Lawyers state the common law rule that "a subrogated insurance carrier must pay its fair share of attorney's fees and costs if it has . . . notice [of the action] and does nothing to assist in the prosecution of the claim." 8D Appleman, *Insurance Law and Practice,* sec. 5198 at 641 n.4 (1981) (citations omitted); *see also* Annotation, *Attorney's Fee—Recovery*

However, in the case at bar, American Family did participate in the prosecution of the action. Thus, *Couch* does not support the court of appeals decision.

*Couch* also cites *Rimes*. However, as the court of appeals noted, the *Garrity* and *Rimes* courts did not consider whether the "make whole" rule is a "net make whole" rule which permits a subrogor to recover attorney's fees from the funds recovered from the tort-feasor before the subrogee may share in such funds. *Oakley,* 157 Wis. 2d at 84.

Moreover, *Rimes* suggests that a subrogor is "made whole" even if he must pay attorney's fees which effectively decrease the amount he recovers from the tort-feasor. The *Rimes* court itemized the subrogor's damages in order to show that the subrogor had not been "made whole" by the subrogee's payment of its policy limits. *See Rimes,* 106 Wis. 2d at 268–69. This detailed itemization did not include attorney's fees.

Furthermore, the *Rimes* court held:

> Under Wisconsin law the test of wholeness depends upon whether the insured has been completely compensated for *all the elements of damages,* not merely those damages for which the insurer has indemnified the insured.

*Id.* at 275 (emphasis added).

In Wisconsin, attorney's fees are not an element of damages absent a statutory or contractual provision to the contrary. *Lightcap v. Steenberg Homes, Inc.,* 160

---

*from Insurer,* 2 A.L.R.3d 1441 (1965). However, as previously discussed, the case at bar is governed by sec. 803.03(2)(b), and American Family participated by its own counsel in the prosecution of this action. Therefore, American Family is not required to contribute toward Oakley's attorney's fees.

Wis. 2d 607, 615, 466 N.W.2d 904 (1991) (citing *Murray v. Holiday Rambler, Inc.,* 83 Wis. 2d 406, 435, 265 N.W.2d 513 (1978)). Accordingly, *Rimes* suggests that an insured is "made whole" even if his attorney's fees, in effect, decrease the amount the insured recovers from a tort-feasor, because attorney's fees are not an element of damages.[7]

Moreover, since attorney's fees are not an element of damages, *Garrity* and *Rimes* are distinguishable from the case at bar. As we stated in *Blue Cross:*[8]

> [T]he compelling equitable factor which defeated the subrogation right asserted in both *Garrity* and *Rimes* (the prospect of an insurer competing with its own insured for funds which are insufficient to make the insured whole) is not present in this case.

*Blue Cross,* 140 Wis. 2d at 551.

Under Wisconsin law, Oakley is "made whole" even if he must pay attorney's fees out of the funds he recovers from Freeman, Affiliated Carriage and its insurer, Fireman's Fund. Therefore, failing to require American Family to make a contribution toward Oakley's attorney's fees does not place American Family in competition with Oakley for funds which are insufficient to make Oakley whole. Accordingly, neither *Garrity* nor

---

[7]We leave for another day the question of what would be a reasonable award of attorney's fees to a subrogor who represents a subrogee's interests pursuant to sec. 803.03(2)(b), Stats. Our holding today is limited to those cases in which the subrogor and subrogee each represent their own interests by separate counsel.

[8]Contrary to Oakley's assertion, *Blue Cross* is applicable to the case at bar because it explains the rationale underlying *Garrity* and *Rimes.*

*Rimes* supports the court of appeals decision.[9]

Oakley advances two arguments in addition to the rationale of the court of appeals. First, Oakley argues that he is entitled to a contribution toward his attorney's fees under the "fund doctrine." Second, Oakley argues that since American Family's policy does not exclude coverage for attorney's fees, the policy should be interpreted to include coverage for attorney's fees. We disagree.

■ We established the "fund doctrine" in *State Farm Mutual Automobile Ins. Co. v. Geline,* 48 Wis. 2d 290,

---

[9]Since we find American Family's arguments concerning sec. 803.03(2)(b) and the "make whole" doctrines of *Garrity* and *Rimes* dispositive, we decline to address American Family's argument that requiring a subrogee to pay a subrogor's attorney's fees violates SCR 20:1.7 by requiring an attorney to represent clients with directly adverse interests. *Sweet v. Berge,* 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (holding that a Wisconsin appellate court need not decide an issue if the resolution of another issue is dispositive).

We also decline to address in detail each of the cases set forth in the court of appeals decision, *Oakley,* 157 Wis. 2d at 85, n.3, for three reasons. First, sec. 803.03(2)(b) governs attorney's fees in subrogation actions in Wisconsin with the exception of the "fund doctrine" set forth in *State Farm Mutual Automobile Ins. Co. v. Geline,* 48 Wis. 2d 290, 179 N.W.2d 815 (1970). Accordingly, the common law decisions of other jurisdictions are not controlling to the extent that they conflict with sec. 803.03(2)(b). Second, the "fund doctrine" cases cited by the court of appeals are not controlling to the extent that they conflict with the limitations placed on the "fund doctrine" by this court in *Geline.* Third, we have already distinguished many of the cases cited by the court of appeals for the proposition that a subrogor may recover all of his reasonable costs and expenses before sums may pass to the subrogee. *See supra,* n.6.

300, 179 N.W.2d 815 (1970), when we held that a subrogee may be required to pay the subrogor's attorney a reasonable fee for enforcing the former's subrogation interest. However, we held in *Geline* that the fund doctrine only applies if three prerequisites are fulfilled. First, the fund—the money received from the tortfeasors—must be "created or brought into being solely by the efforts and steps taken by the attorney who claims an equitable right to fees therefrom." *Id.* at 301. Second, notice must be given to subrogees that an action has been commenced and a reasonable fee will be requested of the court for services rendered in recovering the subrogated interest unless the subrogee joins in the action as a party. *Id.* Third, the subrogee does not become a party to the action. *Id.*

The record shows that none of the prerequisites of the fund doctrine are present in the case at bar. Therefore, Oakley may not rely on *Geline*'s fund doctrine to obtain a pro rata contribution toward his attorney's fees from American Family.

Furthermore, the terms of American Family's policy with Oakley (the policy) do not support his claim for a contribution toward his attorney's fees. Rather, they support American Family's position.[10] Oakley makes his claim against American Family under his uninsured motorist coverage. The uninsured motorist portion of the policy states in relevant part as follows:

> We [American Family] will pay compensatory damages for *bodily injury* which an *insured person*

---

[10]The court reaches this conclusion based upon its independent review of the terms of the insurance policy and the arguments advanced by American Family.

> [Oakley] is legally entitled to recover from the owner or operator of an *uninsured motor vehicle.*

(Emphasis in the original.) The policy defines bodily injury as "bodily injury to or sickness, disease or death of any person." Taken together, these two provisions of the policy defeat Oakley's claim for attorney's fees for two reasons.

First, attorney's fees are not included in the type of losses compensable under the policy's uninsured motorist coverage. Under the provisions of the policy set forth above, the uninsured motorist provisions of the policy provide coverage for "bodily injury to or sickness, disease or death . . .." Attorney's fees do not constitute an injury to the body, sickness, disease or death.

Second, under the terms of the policy set forth above, American Family is obligated to pay Oakley those damages he is legally entitled to recover from the uninsured driver. As previously discussed, Oakley is not legally entitled to recover attorney's fees from Freeman, the uninsured driver.

Oakley argues that since the policy does not contain a definition of "loss" which excludes attorney's fees, we should construe the policy's coverage to include attorney's fees. However, Oakley overlooks the fact that only bodily injuries are covered under the uninsured motorist provisions of the policy. The portion of the policy under which Oakley makes his claim, the uninsured motorist coverage, does not even utilize the term "loss." Accordingly, the lack of a definition of the term "loss" is irrelevant. Moreover, as previously discussed, "loss," or damages,[11] in tort law in Wisconsin has never included

---

[11] In most contexts, the terms "loss" and "damage" in Wisconsin tort law are synonymous. *See Hennekens v. Hoerl,* 160 Wis. 2d 144, 153 n.7, 465 N.W.2d 812 (1991).

834

attorney's fees absent a statutory or contractual provision to the contrary.

Oakley stipulated to the fact that his damages, except for attorney's fees, are $100,000.00. Oakley does not dispute that American Family is entitled to one-half that amount under subrogation. Accordingly, under the American rule, Oakley has been made whole. Thus, *Garrity* and *Rimes* do not require American Family to contribute toward Oakley's attorney's fees. Furthermore, Oakley is not entitled to attorney's fees under sec. 803.03(2)(b), Stats., because American Family participated in the prosecution of this action.

*By the Court.*—The decision of the court of appeals is reversed.

SHIRLEY S. ABRAHAMSON, J. (concurring). I write to address a recurring issue faced by litigants and appellate courts: What is the standard of appellate review when the facts are uncontested and the decision turns on the legal effect of the facts? Stated another way, what is the standard of appellate review when the decision turns on the application of a legal standard to undisputed facts?

The boilerplate language, too often used by litigants and appellate courts, that application of a legal standard to undisputed facts is a question of law which an appellate court can decide independently without deference to the trial court, is, in my opinion, not necessarily correct in every instance. I conclude that the standard of appellate review depends on the nature of the issue involved. See *Hennekens v. Hoerl,* 160 Wis. 2d 144, 172, n.4, 465 N.W.2d 812 (1991) (Abrahamson, J., dissenting); *Mucha v. King,* 792 F.2d 602, 604–606 (7th Cir. 1986); Lee, *Principled Decision Making and the Proper Role of Fed-*

*eral Appellate Courts: The Mixed Questions Conflict,* 64
S. Calif. L. Rev. 235 (1991).