COUNTY OF LA CROSSE, Petitioner-Respondent,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION,
Respondent-Co-Appellant,†

LOCAL 1403 & AFSCME, AFL–CIO, Respondent-
Appellant.††

Court of Appeals

*No. 91–1375. Submitted on briefs February 12, 1992.—Decided
February 4, 1993.*

(Also reported in 497 N.W.2d 455.)

---

† Petition to review filed.
†† Petition to review filed.

---

446

For the respondent-appellant the cause was submitted on the briefs of *Bruce F. Ehlke* of *Lawton & Cates, S.C.* of Madison.

For the respondent-co-appellant the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *David C. Rice,* assistant attorney general.

For the petitioner-respondent the cause was submitted on the briefs of *William A. Shephard* of La Crosse.

Before Eich, C.J., Sundby and Brown, JJ.

SUNDBY, J. The Wisconsin Employment Relations Commission (WERC) and Local 1403, AFSCME, AFL–CIO (the union), appeal from a May 14, 1991 order reversing WERC's decision of September 13, 1990, in which WERC concluded that the municipal employer, La Crosse County, committed a prohibited practice when it refused to proceed to final and binding arbitration of Helen Lewis' grievance for the county's termination of her employment following a work-related injury. We affirm.

## ISSUES

We identify the following issues:

(1) Does the exclusive-remedy proscription of the Worker's Compensation Act preclude a municipal employer from agreeing in a collective bargaining agreement to submit to final and binding arbitration whether the employer had reasonable cause to terminate an employee injured in the course of his or her employment? We conclude that it does not.

447

(2) Did the collective bargaining agreement between the county and the union representing Helen Lewis require that the county proceed to final and binding arbitration as to whether the county had reasonable cause to terminate Lewis' employment because of her work-related disability? We conclude that the collective bargaining agreement required that Lewis' grievance be processed through step three of the grievance procedure, as it was. WERC could not reasonably conclude that the collective bargaining agreement required the county to proceed to final and binding arbitration of Lewis' grievance.

## BACKGROUND

The county employed Helen Lewis as a Resident Aide at the Lakeview Health Center. Her position required her to lift fifty pounds or more. On August 12, 1987, Lewis was injured on the job. She returned to light duty pending a determination as to permanent restrictions. Chiropractor Dr. Ruth V. Jean determined that Lewis had a "permanent disability of [five percent] whole person." Dr. Jean imposed a permanent restriction on Lewis' lifting of twenty-five pounds.

The county relieved Lewis from her position due to her inability to fulfill her job description. Lewis filed a grievance, alleging that the county lacked just cause for terminating her employment. Lewis and her union representative met with the county personnel director and others regarding her grievance. The county clarified that Lewis was not terminated but was placed on disability layoff. Thereafter, the union filed an amended grievance alleging that Lewis' layoff violated additional articles of the collective bargaining agreement.

Lewis' grievance was processed through step three of the grievance procedure—the County Employment

Relations Commission, which denied Lewis' grievance. The union filed a petition with WERC alleging that the county committed a prohibited practice, contrary to sec. 111.70(3)(a)5, Stats., by refusing to arbitrate Lewis' grievance. The WERC examiner concluded that the county had in fact committed a prohibited practice. The examiner's findings of fact, conclusions of law and order became the commission's findings, conclusions and order by operation of law. The circuit court reversed the commission's order. The court held that Lewis' exclusive remedy was under sec. 102.35(3), Stats., of the Worker's Compensation Act. The commission and the union appeal from the trial court's order.

## I.

## EXCLUSIVITY OF WORKER'S COMPENSATION ACT

Section 102.35(3), Stats., provides in part:

> Any employer who without reasonable cause refuses to rehire an employe who is injured in the course of employment, where suitable employment is available within the employe's physical and mental limitations, upon order of the department and in addition to other benefits, has exclusive liability to pay to the employe the wages lost during the period of such refusal, not exceeding one year's wages.

The county argues that sec. 102.03(2), Stats., makes Lewis' remedy under sec. 102.35(3) her exclusive remedy. Section 102.03(2) provides in part: "Where [the] conditions [under subsection (1)] exist the right to the recovery of compensation under this chapter shall be the exclusive remedy against the employer . . .."

449

The county contends that the parties could not, by collective bargaining, waive the exclusivity of the employee's remedies under the Worker's Compensation Act. WERC concedes that it did not expressly address this issue in its decision. WERC stated only that the exclusivity provision of the Worker's Compensation Act did not apply because Lewis was not seeking recovery of worker's compensation. In any event, WERC acknowledges that whether the act provides Lewis with her exclusive remedy is a question of law which we decide without deference to the commission. *Schachtner v. DILHR*, 144 Wis. 2d 1, 4, 422 N.W.2d 906, 907-08 (Ct. App. 1988).

The county cites *Faust v. Ladysmith-Hawkins School Sys.*, 88 Wis. 2d 525, 533, 277 N.W.2d 303, 306 (1979), where the court held that a teacher could not waive the notice and conference requirements for a renewal of teacher contracts. The court said that these procedures inured to the benefit of not only the teacher and the school district but to the public at large. *Id.* The statute "advance[d] the legislatively declared public policy of promoting fairness and thoughtful decisionmaking in the rehiring of public school teachers." *Id.* Also, the statute "establishes a comprehensive and orderly procedure governing the renewal or nonrenewal of teacher contracts in school districts which have no tenure system." *Id.*

We identify no comparable public policy purpose which would be violated if a public employer agreed with an employee that if the employee was injured in the course of employment and was not rehired, the question of reasonable cause for the employer's refusal to rehire would be subject to grievance and arbitration. Such an agreement in a collective bargaining agreement would

450

merely remove the question from the judicial arena. Larson states: "There is . . . no impediment in the compensation act to the contractual provision of supplemental benefits or relaxation of statutory requirements of the act in favor of the employee." 4 LARSON, WORKMEN'S COMPENSATION LAW § 97.52 (1989 & Supp. 1992) (citing *Nelson v. Victory Elec. Works, Inc.*, 338 F.2d 994 (4th Cir. 1964); *Baltimore Transit Co. v. Harroll*, 217 Md. 169, 141 A.2d 912 (1958)). *Cf. O'Keefe v. Associated Grocers of New England, Inc.*, 120 N.H. 834, 424 A.2d 199 (1980).

The history of sec. 102.35(3), Stats., shows that no public policy would be violated if the issue of reasonable cause for refusal to rehire an injured employee was made subject to grievance and arbitration. Section 102.35(3) was not enacted to protect employers, but was created to prohibit employers from discriminating against terminated injured employees. The minutes of the Workmen's Compensation Advisory Council meeting of January 21, 1975, contain the following:

> Proposal Number 26 prohibiting employers from terminating injured employes where there was suitable employment available within their physical limitations was discussed . . .. The Workmen's Compensation Division was requested to draft proposed legislation which would make the availability of suitable employment governed by the provisions in any collective bargaining agreement.

The minutes of the February 6, 1975 meeting of the council contain the following:

> Draft language for amendment to Wisconsin Statute 102.35(2) was discussed and approved. Suggestion was made that a subsection 3 should be created to provide for a fine for discrimination against an employe as to his employment.

Thus, there is nothing in the history of sec. 102.35(2), Stats., which evidences a legislative intent that the question of whether an employer refused to rehire an injured employee "without reasonable cause" may only be decided in judicial proceedings. We see no impediment to submitting that question to grievance and arbitration procedures collectively bargained.

## II.

## THE COLLECTIVE BARGAINING AGREEMENT

We next consider whether the 1989-90 collective bargaining agreement between the county and the union required the county to submit to arbitration the question whether it refused to rehire Lewis "without reasonable cause." The collective bargaining agreement does not explicitly address the refusal of the county to rehire an employee who is injured in the course of his or her employment. Because sec. 102.35(3), Stats., specifically provides a remedy for an employee who the employer refuses to rehire after the employee is injured in the course of employment, we conclude that subjecting that circumstance to arbitration in collective bargaining must be done knowingly and explicitly. We do not find that that has been done in the 1989–90 collective bargaining agreement.

The commission concluded that Lewis' discharge or disability layoff implicated the meaning or application of Article VI or Article XII of the collective bargaining agreement, and that questions as to the meaning or application of any provision of the agreement are subject to final and binding arbitration. WERC asserts that its interpretation of a collective bargaining agreement must

be affirmed if it is reasonable, even though an alternative view may be equally reasonable. *Tecumseh Products Co. v. Wisconsin Employment Relations Bd.*, 23 Wis. 2d 118, 129, 126 N.W.2d 520, 525 (1964). We agree that WERC correctly defines our scope of review. We conclude, however, that the commission could not reasonably conclude that Lewis' grievance involved the interpretation or application of the collective bargaining agreement.

In a very broad sense, every dispute between a municipal employer and a union who are parties to a collective bargaining agreement involves interpretation of the agreement, if only to determine whether the agreement applies to the dispute. We conclude, however, that sec. 12.02 of the agreement negates an intention of the parties to subject every dispute between the parties to arbitration. Section 12.02 provides:

> In the event of any disagreement concerning the meaning or application of any provision of this Agreement, such disagreement shall be resolved in the manner hereinafter set forth. It is further provided that *grievances not involving the interpretation or application of this Agreement* may be processed through Step 3 of this procedure. [Emphasis added.]

It is undisputed that Lewis' grievance was processed through step three of the grievance procedure. We therefore examine those provisions of the collective bargaining agreement which the commission concluded required interpretation as to their application to Lewis' grievance—Articles VI and XII.

Section 6.01 defines the application of Article VI. It provides in part: "In the event of layoff *due to lack of work, or economic cutbacks*, the reduction of forces is to be accomplished by . . .." (Emphasis added.) Article VI does not apply to disability layoffs.

Parties to an arbitration agreement are entitled to the arbitrator's decision only on the issues submitted to the arbitrator. An arbitrator acts within his authority "so long as the award draws its essence from the collective bargaining agreement." *Milwaukee Professional Firefighters v. City of Milwaukee*, 78 Wis. 2d 1, 21, 253 N.W.2d 481, 491 (1977) (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). "The arbitrator's powers, however, are limited to those the parties agreed to give him, and he may not 'dispense his own brand of industrial justice.' " *Milwaukee Teacher's Educ. Ass'n v. Milwaukee Bd. of School Directors*, 147 Wis. 2d 791, 796, 433 N.W.2d 669, 671 (Ct. App. 1988) (quoting *United Steelworkers*, 363 U.S. at 597). An arbitrator's decision that Article VI governed disability layoffs would be set aside under sec. 788.10(1)(d), Stats., because the arbitrator would have exceeded the powers delegated to him or her under the collective bargaining agreement.

Article XII is the Grievance Procedure and Arbitration. Section 12.01 applies to discipline and discharge of an employee and provides:

The administrative procedure for discipline or discharge shall be as follows:

12.01.1 Supervisors shall present a warning in writing to an employee for any infraction or unacceptable behavior and shall indicate whether it be an oral or written warning. A copy of same to be submitted to the steward or the union's designated representative. This requirement would not necessarily apply for the following types of offenses:

(a) Patient abuse.

454

 (b) Theft of County or patient property.

 (c) Falsification of time records.

 (d) Assault and battery.

 (e) Gross insubordination.

12.01.2 Written notice of discharge shall be presented to employee and steward stating cause.

Plainly, sec. 12.01 does not apply to termination or layoff of an employee because of the employee's disability resulting from a work-related injury.

We conclude that WERC could not reasonably conclude that Lewis' grievance involved the interpretation or application of either Article VI or XII of the collective bargaining agreement. We may, however, sustain the commission's decision and order if it reached the right result for the wrong reason. We have that power as to trial court decisions, *State v. Holt*, 128 Wis. 2d 110, 124, 382 N.W.2d 679, 687 (Ct. App. 1985) (citing *Liberty Trucking Co. v. DILHR*, 57 Wis. 2d 331, 342, 204 N.W.2d 457, 463-64 (1973)), and see no reason why we may not extend that power to decisions and orders of administrative agencies.

At oral argument the union argued that the county's termination of Lewis' employment, ostensibly because she could no longer perform the duties required by her job description, constituted discharge without "just cause." The union asserted that sec. 4.01 of the agreement prohibited discharge without "just cause." We disagree.

Article IV is entitled "Seniority and Job Posting." Section 4.01 provides:

> Seniority shall begin with the original date of employment following satisfactory completion of the six (6) month working probationary period. All cases involving increase of the work force, layoffs, promotions, or new positions, shall be based upon seniority, prior work performance, and experience. Prior work performance, ability and experience being equal, the senior employee shall be given the position.

This provision has nothing to do with "cause" for discharge.

The union also suggested that the "just cause" requirement for discharge could be inferred from the management rights clause. Section 2.01 of the agreement provides:

> Except as otherwise provided for in this Agreement, the County retains the normal rights and functions of management and those that it has by law. Without limiting the generality of the foregoing, this includes the right to hire, promote, transfer, demote or suspend or otherwise discharge or discipline for proper cause . . ..

However, sec. 2.01 does not define "proper cause."

The only provision of the agreement which deals with discipline and discharge is sec. 12.01.1, which requires that disciplinary action against an employee for "an infraction or unacceptable behavior" shall be initiated by issuing the employee a written warning. It is undisputed that Lewis was not discharged for any infraction or unacceptable behavior.

It is evident that the county and the union have not collectively bargained the issue of whether an employee who is terminated because of a work-related disability is entitled to any procedural protection or benefit beyond that given the employee in sec. 102.35(3), Stats. While

the right to such protection or benefit may be bargained, it may not be inferred from any provision of the collective bargaining agreement presented for review in this case.

*By the Court.*—Order affirmed.