IN the MATTER OF the ARBITRATION OF a DISPUTE BETWEEN the MILWAUKEE TEACHERS' EDUCATION ASSOCIATION & the MILWAUKEE BOARD OF SCHOOL DIRECTORS: MILWAUKEE TEACHER'S EDUCATION ASSOCIATION, Appellant,

v.

MILWAUKEE BOARD OF SCHOOL DIRECTORS, Respondent.

MILWAUKEE TEACHERS' EDUCATION ASSOCIATION, Petitioner-Appellant,†

v.

MILWAUKEE BOARD OF SCHOOL DIRECTORS, Respondent.

Court of Appeals

*No. 88–0625. Submitted on briefs October 4, 1988.—Decided November 29, 1988.*

(Also reported in 433 N.W.2d 669.)

† Petition to review denied. BABLITCH, J., took no part.

For petitioner-appellant the cause was submitted on the briefs of *Perry, Lerner & Quindel, S.C.* by *Barbara Zack Quindel* and *Richard Perry* of Milwaukee.

For the respondent the cause was submitted on the briefs of *Grant F. Langley* and *Stuart S. Mukamal* of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J.   This is an appeal from an order of the trial court vacating that portion of an arbitrator's award directing the Milwaukee Board of School Directors to reimburse the Milwaukee Teachers' Education Association for "the reasonable cost of attorney fees which the Association incurred in litigating" the grievance that was the subject of the arbitration. The dispute underlying the arbitration concerned the Board's appointment of persons to permanent teaching positions. The arbitrator's ruling on that issue, however, is not challenged.

The matter was before the trial court on consolidated motions under ch. 788, Stats.[1] The union sought confirmation of the arbitrator's award in its entirety

---

[1]Section 788.01, Stats., provides that the chapter "shall not apply to contracts between employers and employes except as provided in s. 111.10." Sec. 111.10, Stats., makes chapter 788 applicable to those labor dispute arbitrations where the parties "agree in writing to have the [Wisconsin Employment Relations Commission] act or name arbitrators in all or any part of [a labor] dispute" and the Commission either names the arbitrators or the parties select arbitrators from a list supplied by the Commission. *See Layton School of Art & Design v. WERC,* 82 Wis. 2d 324, 346, 262 N.W.2d 218, 228 (1978). Section 111.10, Stats., applies to disputes between a "municipal employer" such as the Board in this case, *see* sec. 111.70(1)(j), Stats., and its employees, and also to disputes between employers and employees in the private sector. *Milwaukee Dist. Council 48 v. Milwaukee Sewerage Comm'n.,* 107 Wis. 2d 590, 593–597, 321 N.W.2d 309, 310–312 (Ct. App. 1982). Although the arbitration agreement here provides for the selection of an arbitrator from a list supplied by the Commission if the parties are unable to select one on their own, the record is silent as to whether any of the factual predicates to the application of sec. 111.10, Stats., are present. In any event, the parties have proceeded as if chapter 788 applies to this case, and so shall we.

under sec. 788.09, Stats.[2] The Board sought to have the attorneys' fees portion of the award vacated under sec. 788.10, Stats.[3]

The question here is whether an arbitrator may award attorneys' fees against a party to the arbitration when the arbitration agreement does not expressly authorize it. An affirmative answer to this question would permit imposition of a penalty not contemplated or authorized by the parties to the arbitration

---

[2]Section 788.09, Stats., provides:

**Court confirmation award, time limit.** At any time within one year after the award is made any party to the arbitration may apply to the court in and for the county within which such award was made for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified or corrected under s. 788.10 or 788.11. Notice in writing of the application shall be served upon the adverse party or his attorney 5 days before the hearing thereof.

[3]Section 788.10, Stats., provides:

**Vacation of award, rehearing by arbitrators. (1)** In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:

    (a)  Where the award was procured by corruption, fraud or undue means;

    (b)  Where there was evident partiality or corruption on the part of the arbitrators, or either of them;

    (c)  Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

    (d)  Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

(2)  Where an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

agreement. It would also substantially erode Wisconsin's long adherence to the American rule, which holds that, "absent statute or enforceable contract, litigants pay their own attorneys' fees." *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 257 (1975). We therefore conclude that the arbitrator does not have that power.

Sec. 788.10(1)(d), Stats., provides that a court "must make an order vacating the [arbitration] award ... [w]here the arbitrators exceeded their powers ... ." It is paradigm that an arbitration award within the scope of authority delegated to the arbitrator is "due great deference." *City of Madison v. Madison Professional Police Officers Ass'n,* 144 Wis. 2d 576, 585, 425 N.W.2d 8, 11 (1988). Thus a court may "not substitute its judgment for that of the arbitrator because '[t]he parties contracted for the arbitrator's settlement of the grievance,'" *Id.* (quoting *Denhart v. Waukesha Brewing Co.,* 17 Wis. 2d 44, 51, 115 N.W.2d 490, 493 [1962]). Therefore, "[b]ecause arbitration is what the parties have contracted for, the parties get the arbitrator's award, whether that award is correct or incorrect as a matter of fact or law." *Id.* at 586, 425 N.W.2d at 11 (citing *City of Oshkosh v. Oshkosh Public Library Clerical & Maintenance Employees Union,* 99 Wis. 2d 95, 103, 299 N.W.2d 210, 215 [1980]). *See also United Paperworkers v. Misco, Inc.,* 108 S. Ct. 364, 371 (1987).

An arbitrator acts within his authority so long as the award "'draws its essence from the collective bargaining agreement.'" *Milwaukee Professional Firefighters v. City of Milwaukee,* 78 Wis. 2d 1, 21, 253 N.W.2d 481, 491 (1977) (quoting *United Steelworkers*

*of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 [1960]). The arbitrator's powers, however, are limited to those the parties agreed to give him, and he may not "dispense his own brand of industrial justice." *United Steelworkers,* 363 U.S. at 597. Since we are essentially bound by the arbitrator's view of the facts, the issue here turns on not whether there was "bad faith" so as to make an award of attorneys' fees *warranted* (the Board argues that there was no bad faith) but, rather, whether an award of attorneys' fees was *authorized* by the arbitration agreement.

The arbitrator in this case was appointed to resolve a grievance between the union and the board. The specific grievance presented to the arbitrator was, as phrased by him, whether the Board violated the collective bargaining agreement "when it failed to appoint teachers under regular contracts to fill vacancies which occurred at the Congress and Happy Hill Schools during the 1984–1985 school year."

In fulfilling his task to adjudicate grievances, the agreement provides that the arbitrator "shall be bound by the principles of law relating to the interpretation of contracts followed by Wisconsin courts." Therefore, the arbitrator was required to abide by principles of Wisconsin contract law. *See Madison Professional Police Officers,* 144 Wis. 2d at 585–586, 425 N.W.2d at 11 (parties must receive "arbitration that they contracted for").

Wisconsin law concerning the award of attorneys' fees in contract cases is clear: this state follows the American rule. This rule holds that, with the exception of those attorneys' fees incurred in third-party litigation caused by the party from whom fees are sought, attorneys' fees may not be awarded unless

authorized by statute or by a contract between the parties. *Kremers-Urban Co. v. American Employers Ins. Co.,* 119 Wis. 2d 722, 744–747, 351 N.W.2d 156, 167–169 (1984).

The Wisconsin Supreme Court, in one limited area, however, has modified the American rule's requirement that attorneys' fees must be authorized by contract or by express statutory language before they may be awarded. *See Watkins v. LIRC,* 117 Wis. 2d 753, 345 N.W.2d 482 (1984). Though affirming the American rule's vitality, *id.* at 758, 345 N.W.2d at 485, *Watkins* held that the Wisconsin Fair Employment Act impliedly authorized an award of attorneys' fees in matters within its jurisdiction. *Id.* at 761–765, 345 N.W.2d at 486–88. *Watkins* was implicitly, and tacitly, limited to its specific circumstances three months later in *Kremers-Urban,* which considered an argument that a provision of the Uniform Declaratory Judgments Act, sec. 806.04(10), Stats., permitted an award of attorneys' fees by authorizing courts to "make such award of costs as may seem equitable and just." Though it did not mention *Watkins,* the court in *Kremers-Urban* refused to "imply the power to award [attorneys'] fees from statutes," since the "legislature is presumed to have acted with full knowledge of the general rule that attorney's fees are not recoverable unless expressly authorized by statute." *Kremers-Urban,* 119 Wis. 2d at 746, 351 N.W.2d at 168. *Kremers-Urban* is thus a forceful reminder that departures from the American rule are narrowly drawn exceptions.

■ Since the collective bargaining agreement does not expressly empower the arbitrator to award attorneys' fees and there is no statute authorizing that

award, the arbitrator—bound by principles of Wisconsin contract law—was bound by the American rule. Accordingly, he exceeded his authority in directing the Board to pay the union's attorneys' fees.

In support of its argument that we must defer to the arbitrator's decision to award attorneys' fees here, despite the applicability of the American rule, the union points to two federal cases that upheld such awards, *Synergy Gas Co. v. Sasso,* 853 F.2d 59 (2d Cir. 1988) and *Litton Systems v. Local 522,* 90 L.R.R.M. 2964 (court ordered further proceedings), 90 L.R.R.M. 3176 (S.D. Ohio 1975). The union also points to a number of arbitration cases where arbitrators awarded attorneys' fees.[4] None of these authorities is persuasive.

First, the parties in *Synergy Gas* acquiesced to the arbitrator's award of attorneys' fees by their stipulated submission and by their silence in response to the arbitrator's statement that one of the issues he would decide was whether there was an entitlement to the "payment of legal fees." *Synergy Gas,* 853 F.2d at 64. There has been no such stipulation here. Indeed, as the trial court pointed out, the union did not even ask the arbitrator to award attorneys' fees.

Second, the arbitration agreement in *Litton Systems* specifically empowered the arbitrator to define the limits of his own authority, a clause that the arbitrator noted was "uncommon." *Litton Systems,* 90 L.R.R.M. at 3177.

Third, in the other arbitration cases cited by the union, the arbitration awards were not, apparently, subjected to judicial review. In any event, the union

---

[4]While the arbitration decisions do not indicate in what states they were issued, the parties have not represented that any were from Wisconsin.

has not demonstrated any special nexus between those awards and the circumstances here so as to make the arbitrators' analyses pertinent or persuasive. In face of Wisconsin's longstanding adherence to the American rule, we decline to follow them.[5]

In further support of its argument that the arbitrator's award of attorneys' fees should be confirmed, the union cites dictum from *Madison Teachers Inc. v. WERC*, 115 Wis. 2d 623, 340 N.W.2d 571 (Ct. App. 1983), for the proposition that a finding of "bad faith" justifies an award of attorneys' fees under the rationale expressed in *Alyeska Pipeline Service*, 421 U.S. at 258–259. *Alyeska* noted that the federal courts "may assess attorneys' fees for the 'willful disobedience of a court order … as part of a fine to be levied on the defendant,' or when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Ibid.* (citations omitted). The union argues that the arbitrator here determined that the Board was acting in bad faith because he found that the Board "has continued to misapply" directives by previous arbitrators. The arbitrator believed that an award of attorneys' fees would "provide an economic disincentive" to the Board's "repeating the type of violations found herein." *Madison Teachers* is not in point.

*Madison Teachers* concerned litigation before the Wisconsin Employment Relations Commission and the issue there was whether the commission had authority to award attorneys' fees for the "bad faith" refusal of an employer to comply with an arbitration award. On review of an examiner's decision to award

---

[5]The Board cites other arbitration decisions where attorney's fees were not awarded.

attorneys' fees, the commission (1) rejected the examiner's view that attorneys' fees could be awarded where one of the parties has acted in bad faith; (2) ruled that attorneys' fees could only be awarded when they were authorized by either statute or contract or where there was inadequate union representation; and (3) found that there was no bad faith. *Madison Teachers,* 115 Wis. 2d at 626–627, 340 N.W.2d at 574. The trial court affirmed the commission's denial of attorneys' fees. On appeal, Madison Teachers argued that emerging federal common law should be applied. *Id.* at 627, 340 N.W.2d at 574. The court of appeals, however, noted that even if they accepted that contention, "an award of attorney fees would be improper in this case" because the commission specifically found that there had been no bad faith. *Ibid.* Therefore, *Madison Teachers* did not hold that Wisconsin would adopt the federal exceptions to the American rule discussed in *Alyeska Pipeline Service.*

There is a second, equally persuasive, reason why the passing dictum in *Madison Teachers* does not apply here. There is substantial difference between the scope of permissible judicial review of decisions by the commission (the situation in *Madison Teachers*) and the scope of judicial review of an arbitrator's award (the situation here). Courts reviewing a decision by the commission to award attorney's fees apply the "substantial evidence" test to determine whether a "bad faith" finding is supported by the record. *See id.* at 626, 340 N.W.2d at 573. On the other hand, as we have seen, the scope of judicial review of an arbitrator's findings is extremely narrow. Indeed, there is authority that an arbitrator "need not render an account of the reasons for his award." *McKenzie v. Warmka,* 81 Wis. 2d 591, 601, 260 N.W.2d 752, 757

(1978). To permit an arbitrator's essentially unreviewable finding that one party has acted in "bad faith" to support an award of attorneys' fees when the parties have not agreed to that potential remedy would give the arbitrator powers beyond those delegated to him. In essence, it would permit the arbitrator to unlawfully "dispense his own brand of industrial justice," *United Steelworkers,* 363 U.S. at 597 and would be far beyond "the arbitration that [the parties] contracted for." *Madison Professional Police Officers,* 144 Wis. 2d at 585–586, 425 N.W.2d at 11. The trial court properly ruled that the arbitrator exceeded his powers.

*By the Court.*—Order affirmed.