In re the Arbitration between

## John W. Winkelman,
### Petitioner-Appellant-Cross-Respondent,††

v.

## Kraft Foods, Inc.,
### Respondent-Respondent-Cross-Appellant.†

Court of Appeals

*No. 03–2355. Submitted on briefs May 6, 2004.—Decided January 27, 2005.*

## 2005 WI App 25

(Also reported in 693 N.W.2d 756.)

† Petition to review denied 6-1-2005.
†† Petition for cross review denied 6-1-2005.

On behalf of the petitioner-appellant-cross-respondent, the cause was submitted on the briefs of *Jacob P. Westerhof* and *Cari Anne Renlund* of *DeWitt Ross & Stevens, S.C.*, Madison.

On behalf of the respondent-respondent-cross-appellant, the cause was submitted on the briefs of *Roy L. Prange, Jr.* of *Quarles & Brady, LLP*, Madison.

Before Deininger, P.J., Dykman and Lundsten, JJ.

¶ 1. DEININGER, P.J. John Winkelman appeals a judgment that confirmed his right to recover compensatory damages awarded him by an arbitrator but denied his recovery of punitive damages and attorney fees that the arbitrator also awarded. Kraft Foods, Inc., cross-appeals, claiming that the circuit court should have set aside the arbitrator's award in its entirety. We conclude that the arbitrator did not exceed her powers or perversely misconstrue the law in awarding Winkelman the amounts that she did. Accordingly, all aspects of the arbitration award should have been confirmed. We therefore affirm in part, reverse in part and direct that, on remand, judgment be entered in Winkelman's favor for compensatory and punitive damages, and for attorney fees, all as awarded by the arbitrator. We deny, however, Winkelman's request for an order requiring Kraft to pay his reasonable attorney fees for the post-arbitration litigation.

## BACKGROUND

¶ 2. The dispute in this case arose out of a forward pricing contract whereby Winkelman agreed to sell "the entire output of milk" produced on his farm to Kraft, at a price determined under the contract, for a period of one year. The contract provided, among other things, that disputes arising under the parties' contract were to be arbitrated. The arbitration provision read as follows:

> Any disputes arising under this agreement will be resolved by binding arbitration pursuant to the rules of

the American Arbitration Association, before a single arbitrator, in a mutually convenient location in the State of Wisconsin.

¶ 3. Early in the contract year, milk prices rose substantially, and Winkelman sought to be released from the contract. Kraft refused to cancel the contract, threatening to sue him for damages if he breached the contract and to sue any milk purchasers who bought his milk during the balance of the contract year. Winkelman continued to provide all of his milk to Kraft for the remainder of the contract year, but he demanded arbitration of his claim that Kraft should have allowed him to terminate the contract for a minimal penalty when he requested it. Specifically, he alleged the following:

> The Nature of the Dispute: We were told by [Kraft's agent] that if price of milk dropped [sic] we could quit shipping milk to Kraft. We would lose 1 months [sic] premiums & that would be that. He lied to get us to sign.

> The Claim for Relief Sought: $45,237.37 plus Nov & Dec milk.

¶ 4. In a preliminary ruling, the arbitrator allowed Winkelman to amend his claim to add requests for punitive damages and reasonable attorney fees in addition to compensatory damages. The arbitrator permitted the amendment after concluding that Winkelman's additional claims were permitted under "the language of the parties' Contract, the provisions of the AAA [American Arbitration Association] Commercial Arbitration Rules . . . and . . . Wisconsin Statutory law which permit the awarding of attorneys fees and costs where the making of fraudulent representations has been proven and an award of punitive damages in certain cases." The parties stipulated to compensatory

damages in the amount of $44,056.68 should Winkelman prevail on his claim that Kraft fraudulently induced him to enter into the forward pricing contract.

¶ 5. The arbitrator found that Kraft's agent had in fact misrepresented to Winkelman and other farmers that "they could get out of the contract with one month's penalty." She concluded:

> The evidence and testimony in this case supports a conclusion that . . . [an] agent and employee of Kraft Foods, Inc., misrepresented the Kraft forward pricing contract for 2001 to the Claimant. Mr. Winkelman relied upon [the agent]'s representations to his detriment and is, therefore, entitled to be made whole for his loss. He is entitled to an award for his attorney's fees and all costs of this arbitration. There is also support for a conclusion that various Kraft employees, on behalf of the Corporation, acted in reckless disregard of Mr. Winkelman's rights under his contract with Kraft, supporting an award of punitive damages in this case. The Contract between the parties, the Rules which apply to the conduct of this matter together with Wisconsin statutory and case law provide the Arbitrator with authority to make these awards.

As to her authority to award attorney fees, the arbitrator cited the AAA Rules agreed to by the parties, which provide for "an award of attorneys' fees if . . . it is authorized by law," and WIS. STAT. § 100.18(11)(b) (2003–04),[1] which permits "reasonable attorney fees" to be awarded to someone who incurs pecuniary loss because of a violation of that statute. Regarding punitive damages, the arbitrator relied on the arbitration rule authorizing her to "grant any remedy or relief that

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted. The relevant provisions of WIS. STAT. § 100.18 are quoted at footnote 2, below.

the arbitrator deems just and equitable and within the scope of the agreement of the parties," and the absence of any Wisconsin law prohibiting an award of punitive damages in arbitration proceedings.

¶ 6. The arbitrator granted Winkelman the stipulated sum ($44,056.68) as compensatory damages, double that amount ($89,313.36 [sic]) as punitive damages, his costs ($5,750), and attorney fees in the amount of $27,333.95. Winkelman commenced an action in Dane County Circuit Court to confirm the arbitrator's award. The circuit court confirmed the compensatory damage award but concluded that the arbitrator "exceeded her authority in awarding attorneys' fees . . . pursuant to Wis. Stat. § 100.18" and "in awarding punitive damages." The court entered judgment in Winkelman's favor for the compensatory damages and costs the arbitrator had awarded, together with interest "at the legal rate of 5 percent" from the date of the arbitrator's awards. Winkelman appeals the circuit court's failure to confirm the punitive damages and attorney fees awards, and Kraft cross-appeals the court's confirmation of the compensatory damage award.

## ANALYSIS

¶ 7. We review the arbitrator's award de novo and decide independently whether the arbitrator's award should be confirmed in whole or in part, owing no deference to the circuit court's conclusions. *See City of Madison v. Local 311, Int'l Ass'n of Firefighters, AFL-CIO*, 133 Wis. 2d 186, 190, 394 N.W.2d 766 (Ct. App. 1986). Our review of an arbitration award is highly deferential; we may disturb the award only if we conclude the arbitrator committed one of a limited

number of transgressions. *See City of Madison v. Madison Prof'l Police Officers Ass'n,* 144 Wis. 2d 576, 586, 425 N.W.2d 8 (1988) ("[T]he court will not overturn the arbitrator's decision for mere errors of law or fact, but only when 'perverse misconstruction or positive misconduct [is] plainly established, or if there is a manifest disregard of the law, or if the award itself is illegal or violates strong public policy.' ") (citation omitted).

¶ 8. Thus, we are not to substitute our judgment for that of the arbitrator, *Milwaukee Teacher's Education Association v. Milwaukee Board of School Directors,* 147 Wis. 2d 791, 795, 433 N.W.2d 669 (Ct. App. 1988), and we may vacate an award only if it violates the foregoing common law standards or those established by statute. *See Lukowski v. Dankert,* 184 Wis. 2d 142, 150–51, 515 N.W.2d 883 (1994). The statutory standards for vacating an arbitrator's award are as follows:

> In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:
>
> (a) Where the award was procured by corruption, fraud or undue means;
>
> (b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them;
>
> (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

Wis. Stat. § 788.10(1).

¶ 9. In short, an arbitrator's award comes before us clothed with a presumption that it should be confirmed, and Kraft bears a heavy burden in attempting to convince us that any of the amounts the arbitrator awarded to Winkelman should be set aside. *See De-Baker v. Shah*, 194 Wis. 2d 104, 112, 117, 533 N.W.2d 464 (1995).

### Arbitrator's Award of Attorney Fees

¶ 10. Kraft first claims that the arbitrator exceeded her powers in awarding attorney fees under Wis. Stat. § 100.18.[2] This is so, according to Kraft, because the statute does not apply to commercial transactions

---

[2] Wisconsin Stat. § 100.18(1) provides, as relevant here, as follows:

> No corporation or agent or employee thereof, with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase [or] sale of any merchandise shall make, or cause, directly or indirectly, to be made in this state in any way [a] statement or representation of any kind to the public relating to such purchase [or] sale or to the terms or conditions thereof, which statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

Section 100.18(11)(b) provides that any "person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent jurisdiction and shall recover such pecuniary loss, together with costs, including reasonable attorney fees."

such as the forward pricing contract for milk at issue in this case, Winkelman was not "the public" as the statute requires, there was no "sales promotion" or "sale of services" by Kraft and milk is not "merchandise." For good measure, Kraft also asserts that the arbitrator perversely misconstrued the law and manifestly disregarded it when she relied on § 100.18 to award Winkelman attorney fees. It offers no additional authority or analysis for these latter propositions, however, relying instead on its earlier "exceeded its authority" arguments. Kraft also argues that an arbitrator cannot award attorney fees for a violation of § 100.18 because the statute allows only "a court of competent jurisdiction" to do so.

¶ 11. Kraft's argument regarding the arbitrator's application of WIS. STAT. § 100.18 is, essentially, that the arbitrator got it wrong. Even if that is so, however, we cannot set aside the award for "mere errors of law or fact." *Madison Prof'l Police Officers Ass'n*, 144 Wis. 2d at 586. Winkelman took his claim against Kraft to an arbitrator because Kraft's standard form contract required him to do so. The parties having thus contracted to arbitrate any disputes between them arising from the forward pricing contract, our role "is essentially supervisory, with the goal of assuring that the parties are getting the arbitration that they contracted for . . . . [T]he parties get the arbitrator's award, whether that award is correct or incorrect as a matter of fact or law." *Id.* at 585–86 (citation omitted). Court proceedings to confirm an arbitrator's award do not provide a forum for a losing party to re-litigate the issues decided by the arbitrator, and we will not vacate the present award unless Kraft convinces us that the arbitrator deliberately disregarded the law. *See Lukowski v. Dankert*, 178

346

Wis. 2d 110, 115, 503 N.W.2d 15 (Ct. App. 1993), *affirmed,* 184 Wis. 2d 142, 515 N.W.2d 883 (1994). Kraft has failed to convince us that the arbitrator did so.

¶ 12. First, as to the scope of the arbitrator's powers, nothing in the terse arbitration provision of the parties' contract limits the relief or remedies an arbitrator may grant. The arbitration rules to which the parties agreed provide that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . scope . . . of the arbitration agreement." Thus, the arbitrator plainly was within her right to rule on Winkelman's motion to have his claims for punitive damages and attorney fees arbitrated. Similarly, her reliance on the arbitration rule granting her the authority to award attorney fees if "it is authorized by law," and her reliance on a Wisconsin statute for such authority, were within the scope of the powers these parties agreed to confer on the arbitrator by way of the rules they adopted.

¶ 13. Thus, we turn to Wis. Stat. § 100.18 and case law interpreting it to see if the arbitrator's application of it to the present facts may be deemed a perverse misconstruction or manifest disregard of the law. We agree with Winkelman that, because some courts have concluded that § 100.18(1) may be applied in a commercial setting (that is, that the statute does not apply exclusively to the consumer protection arena as Kraft argues), the arbitrator did not act "perversely" in applying it here. The supreme court concluded in *Gorton v. American Cyanamid Co.*, 194 Wis. 2d 203, 533 N.W.2d 746 (1995), that the circuit court had not erred in permitting a farm partnership to recover attorney fees under § 100.18 from a pesticide company that had

347

violated the statute. *See id.* at 232. The U.S. District Court for the Western District of Wisconsin cited *Gorton* for the proposition that Wisconsin courts have applied § 100.18 to "commercial entities," rejecting a claim similar to Kraft's that the statute governs only transactions involving "consumers." *See Stoughton Trailers, Inc. v. Henkel Corp.*, 965 F. Supp. 1227, 1236–37 (W.D. Wis. 1997).

¶ 14. That Kraft made misrepresentations to "the public" within the meaning of Wis. Stat. § 100.18 also finds support in Wisconsin law. We recently reaffirmed that "the public" can consist of only one person, the key factor being whether the allegedly fraudulent or deceptive statements were made prior to the recipient's entering into a contractual relationship with the maker of the statements. *See Kailin v. Armstrong*, 2002 WI App 70, ¶ 44, 252 Wis. 2d 676, 643 N.W.2d 132 (citing *State v. Automatic Merchandisers of Am., Inc.*, 64 Wis. 2d 659, 664, 221 N.W.2d 683 (1974)). Here, the arbitrator found that Kraft's agent misrepresented to Winkelman, and to other farmers, that the forward pricing contract could be terminated at any time for a minimal penalty, and that these statements occurred before Winkelman agreed to sign the contract.

¶ 15. Finally, Kraft's claims regarding the absence of (1) a "sales promotion," (2) the "sale of services" by Kraft, and (3) "merchandise," are similarly of no avail. Kraft cites no legal authority whatsoever for its arguments in these regards, and we therefore fail to see how these arguments show that the arbitrator perversely misconstrued or disregarded Wisconsin law. In any event, because the arbitrator found that Kraft's misrepresentations induced Winkelman to enter into a contract to sell his milk to Kraft, we see nothing in the language of Wis. Stat. § 100.18(1) that would render it

inapplicable here. Put another way, we see no reason why the seller of a product who is fraudulently induced by a buyer's misrepresentation to contract for its sale on terms advantageous to the buyer should be any less worthy of protection under the statute than a buyer who is induced by a seller's falsehood into overpaying for a product or service. *See* § 100.18(1) ("No. . . . corporation . . . or agent or employee thereof, with intent to . . . induce the public in any manner to enter into *any contract* or obligation *relating to the purchase [or] sale* . . . of any . . . merchandise . . . . " (emphasis added)).

█

¶ 16. Wisconsin courts have typically interpreted the scope of WIS. STAT. § 100.18 broadly, not narrowly. *See, e.g., Dorr v. Sacred Heart Hosp.*, 228 Wis. 2d 425, 445, 597 N.W.2d 462 (Ct. App. 1999) ("Section 100.18 prohibits deceptive, misleading, or untrue statements of any kind to the public made in a commercial setting, no matter how made."). Thus, even though Kraft offers plausible arguments that the arbitrator may have erred in its application of § 100.18 to the present dispute, we cannot conclude that the arbitrator's construction of § 100.18 was perverse, or that she manifestly disregarded the law in relying on the statute to award reasonable attorney fees to Winkelman. As we have discussed, some support can be found in Wisconsin case law for the arbitrator's interpretation. *See Lukowski*, 184 Wis. 2d at 153 ("[A]n arbitrator cannot be said to have manifestly disregarded the law if substantial authority sustains the arbitrators assumption as to the law.").

¶ 17. Kraft also contends that the arbitrator exceeded her powers or manifestly disregarded the law because recoveries under WIS. STAT. § 100.18 may be had only in a "court of competent jurisdiction." Section

100.18(11)(b)2. We note again that Winkelman's dispute with Kraft was decided by an arbitrator instead of a court only because Kraft's standard form contract so required. As we have also explained, the rules the parties agreed to permitted the arbitrator to award attorney fees if "authorized by law," and the arbitrator looked to Wisconsin substantive law to determine whether attorney fees could be awarded on the present facts. Her authority to award the fees thus derived from the parties' contract and the rules it adopted, not directly from the statute itself. The only role the statute played was to demonstrate that Wisconsin substantive law authorizes attorney fees to be awarded when a party is induced by another's misrepresentations to enter into a contract.

¶ 18. Kraft next points to *Finkenbinder v. State Farm Mutual Auto Insurance Co.*, 215 Wis. 2d 145, 572 N.W.2d 501 (Ct. App. 1997), and *Milwaukee Teacher's Education Association*, 147 Wis. 2d 791, in support of its claim that an arbitrator may award attorney fees only if expressly authorized to do so by the parties' contract. The case law Kraft cites is unavailing. We decided in *Finkenbinder* that a party could not obtain a circuit court order for costs under WIS. STAT. § 814.01 after being awarded damages by an arbitrator. *Finkenbinder*, 215 Wis. 2d at 151–52. We did *not* say, or even imply, that an arbitrator could not rely on Wisconsin statutes in determining whether to award costs to a party who prevailed in the arbitration proceeding. Similarly, we concluded in *Milwaukee Teacher's* that, in the absence of express authority in the arbitration agreement, an arbitrator may not award attorney fees as that would "substantially erode Wisconsin's long adherence to the American rule, which holds that 'absent statute or enforceable contract, litigants pay

their own attorneys' fees.' " *Milwaukee Teacher's Educ. Ass'n*, 147 Wis. 2d at 705 (citation omitted). Here, as we have explained, the parties' contract, via the rules it adopts, permits an attorney fees award if "authorized by law." In this case, that authority is supplied by WIS. STAT. § 100.18, which in turn also satisfies the exception to the American Rule allowing fee shifting if a statute provides for it.

¶ 19. In sum, Kraft has failed to meet its burden to convince us that, in awarding attorney fees to Winkelman, the arbitrator exceed her powers, or that, by doing so, she perversely misconstrued or deliberately ignored Wisconsin law.

### Arbitrator's Award of Punitive Damages

¶ 20. We turn next to Kraft's claim that the arbitrator exceeded her powers by awarding Winkelman punitive damages. Kraft's claim is considerably weakened by its acknowledgement that "whether an Arbitrator has the power to award punitive damages in the absence of an express agreement has not been decided in Wisconsin." We have previously explained that when "no Wisconsin case has addressed" a specific issue, an arbitrator is "free to fill the interstices in the existing relevant law." *Lukowski*, 178 Wis. 2d at 116. In other words, so long as the arbitrator did not unreasonably conclude that, under the arbitration rules the parties agreed to, she was empowered to award punitive damages, that conclusion cannot be said to perversely misconstrue or manifestly disregard Wisconsin law that does not exist.

¶ 21. The arbitrator's chief justification for her authority to award punitive damages is the AAA rule providing that an arbitrator "may grant any remedy or

351

relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties." The U.S. Supreme Court has concluded that similarly open-ended language ("arbitrators may award 'damages and other relief' ") in agreed-upon arbitration rules supports a conclusion that the parties authorized their arbitrator to award punitive damages, especially when, as in this case, the party against whom punitive damages were awarded had drafted the parties' standard-form contract. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 60–63 (1995). Even though *Mastrobuono* involved the Federal Arbitration Act, the Court's rationale is persuasive on the present facts. *See Diversified Mgmt. Servs., Inc. v. Slotten*, 119 Wis. 2d 441, 446, 351 N.W.2d 176 (Ct. App. 1984) ("Federal cases construing the federal act . . . are persuasive authority for our interpretation of sec. 788.10.").

¶ 22. We thus conclude that the arbitrator did not perversely misconstrue the law or the parties' contract, and neither did she manifestly disregard controlling law, by concluding that she was authorized to award punitive damages. We briefly address Kraft's remaining arguments to the contrary.

¶ 23. Kraft notes that "[s]ix other arbitrators, in related cases involving the same form contract, the same alleged statements from Kraft's employee . . . and the same behavior by Kraft, rejected claims for punitive damages and attorneys' fees." Our response to this information is twofold. First, the fact that other arbitrators in similar cases "rejected claims for punitive damages" does not necessarily mean that those arbitrators concluded that they were not empowered to award them—they may have concluded that the claimants in those cases did not make the proper showing to be

awarded punitive damages. Moreover, even if the other arbitrators determined, contrary to this arbitrator's conclusion, that they could not award punitive damages, that fact, by itself, does not mean that they were right and this arbitrator was wrong. Finally, as we have discussed, even if this arbitrator was wrong in concluding she could award punitive damages, we would not set aside the award unless she was "perversely" or "manifestly" wrong.

¶ 24. In lieu of first presenting substantive arguments as to why we must conclude that the arbitrator in this case exceeded her powers in awarding punitive damages, Kraft urges us, for policy reasons, to "adopt the approach taken" by the Illinois Court of Appeals in *Edward Electric Co. v. Automation, Inc.*, 593 N.E.2d 833 (Ill. App. 1992). The Illinois court explained that courts in various jurisdictions have generally adopted one of three approaches to the issue of an arbitrator's power to award punitive damages: (1) arbitrators may award them unless the arbitration agreement provides otherwise; (2) private arbitrators may never award them because only the state may do so; or (3) arbitrators may award them if the arbitration agreement expressly so provides. *Id.* at 842–43. The Illinois Court of Appeals opted for the third approach on public policy grounds, finding it a workable compromise between the "dangers of allowing arbitrators to award punitive damages" arising from the limited and deferential standard for judicial review, and "the need for arbitrators to have the power to award full and complete relief." *Id.* at 843.

¶ 25. We decline to make this policy choice for the state of Wisconsin. We are primarily an error-correcting court. *Jackson v. Benson*, 213 Wis. 2d 1, 18, 570 N.W.2d 407 (Ct. App. 1997), *reversed on other grounds,* 218 Wis.

2d 835, 578 N.W.2d 602 (No. 97–0270). Our role in this case is to determine whether the arbitrator violated any of the standards set forth in case law or WIS. STAT. § 788.10(1) that would require us to vacate her award or any part of it. The present arbitrator essentially adopted the first approach cited by the Illinois court in *Edward Electric*, which is also the rule largely embraced by federal courts under the Federal Arbitration Act: an arbitrator may award punitive damages if permitted to do so under the rules adopted by the parties, so long as the award is not otherwise proscribed by the parties' agreement. As we have noted, federal precedents under the Federal Arbitration Act are deemed persuasive in interpreting WIS. STAT. ch. 788. Accordingly, given our deferential standard of review, we find no basis for rejecting the arbitrator's determination that she was empowered by the rules agreed to in the parties' contract to entertain a claim for punitive damages. If Wisconsin is to depart from the federal approach on this issue and adopt some other rule, that policy choice must come from the legislature or the supreme court, not this court.

¶ 26. We thus decline Kraft's invitation to consider several policy arguments it claims weigh in favor of adopting the conclusion of the Illinois Court of Appeals in *Edward Electric*. We turn, instead, to Kraft's remaining arguments that the arbitrator's decision that she could award punitive damages cannot be allowed to stand under present Wisconsin law. We find these arguments to be unpersuasive and largely repetitive.

¶ 27. As its first substantive legal argument, Kraft contends that the parties' agreement does not permit an award of punitive damages because the language of their contract does not expressly provide for that remedy. This argument, however, is simply a

354

restatement of Kraft's public policy argument that we should adopt the Illinois approach that precludes punitive damages in the absence of express contract authorization, instead of the federal rule that permits an award if the agreed upon rules do and the contract does not provide otherwise. We again decline the invitation.

¶ 28. Kraft next argues that the AAA rule that the arbitrator relied on, which authorizes her to "grant any remedy or relief that [she] deems just and equitable and within the scope of the agreement of the parties," does *not* permit an award of punitive damages because the parties' contract does not authorize punitive damages as a remedy. In support, Kraft cites another Illinois precedent embracing the *Edward Electric* rule. We reject this third incarnation of Kraft's argument based on Illinois law.

¶ 29. Next, in what is at best a slight variation of the same argument, Kraft asks us to reject the federal precedents, such as *Mastrobuono*, in favor of the more state-friendly *Edward Electric* approach. It cites cases from other states, most notably *Garrity v. Lyle Stuart, Inc.*, 353 N.E.2d 793 (1976), a case discussed in *Mastrobuono*. Kraft asserts that a "majority" of state courts have adopted either the *Edward Electric* rule or the more restrictive *Garrity* approach, which is essentially an absolute prohibition against punitive damage awards in arbitration proceedings. *Garrity*, 353 N.E.2d at 796. We acknowledge that federal precedents, like those from other states, are not binding on us, and we do not view the Federal Arbitration Act as controlling in our present analysis. However, we are *not* here adopting the "federal approach" as the law in Wisconsin. Rather, we conclude only that the arbitrator's reliance on the federal precedents and her analysis of the scope of her authority under the parties' agreement was not a per-

verse misconstruction or deliberate defiance of present Wisconsin law. In the absence of controlling Wisconsin statutes or precedent to the contrary, we can reach no other conclusion.

¶ 30. Kraft also contends that Wisconsin has, in effect, already adopted the *Edward Electric* approach. Kraft claims that, under the rationale of *Milwaukee Teacher's*, the absence of an express authorization in the arbitration agreement for punitive damages, like the absence of an express authorization for an award of attorney fees, is fatal to Winkelman's position. But, as we have explained in discussing the attorney fees issue, our conclusion in *Milwaukee Teacher's* was that, because Wisconsin embraces the "American Rule," a prevailing party in arbitration cannot be awarded attorney fees unless a contract or statute authorizes fee shifting. In *Milwaukee Teacher's*, neither the parties' contract nor any statute provided for fee shifting, while here, the parties' contract, by way of the rules it adopted, permitted fee shifting if "authorized by law," and Wis. Stat. § 100.18 so authorizes.

¶ 31. Similarly, the agreed-upon rule containing the broad "relief and remedies" language, under the rationale set forth in *Mastrobuono*, permitted the arbitrator to award punitive damages upon a proper showing of entitlement to them. Wisconsin Stat. § 895.85(3) provides that the "plaintiff may receive punitive damages if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff." The arbitrator determined that Kraft had acted maliciously and intentionally disregarded Winkelman's rights, thus, in her view, permitting an award of punitive damages to Winkelman. Kraft does not directly challenge the arbitrator's determination that Kraft acted

356

maliciously and in intentional disregard of Winkelman's rights until its brief in the cross-appeal. We thus defer consideration of whether, if the arbitrator was in fact empowered to award punitive damages, she nonetheless perversely misconstrued the law in doing so. For present purposes, we conclude only that the arbitrator was legally empowered to award punitive damages because nothing in Wisconsin law, including our holding in *Milwaukee Teacher's*, prohibits an arbitrator from awarding punitive damages in a proper case.

¶ 32. Next, Kraft argues that, because the Wisconsin statute dealing with punitive damages refers to the "plaintiff," the "defendant," the "judge," the "jury," and the "court," the legislature intends that only courts, and not arbitrators, may award punitive damages.[3] Not only is this a strained reading of the statute in question, ascribing to the legislature an intent that is not conveyed by the statute's plain language, but we also once again point out that Winkelman pursued his claim in arbitration instead of a court only because Kraft's contract so required. The contract does not limit the types of claims Winkelman can pursue in arbitration, and neither does it limit the types of relief or remedies available to him in that forum. Having thus elected, without qualification or limitation, to bestow on an arbitrator the duties of a judge and jury, Kraft cannot now complain that the arbitrator fulfilled those duties.

---

[3] WISCONSIN STAT. § 895.85(3) provides: "The plaintiff may receive punitive damages if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff." Section 895.85(4)(b) provides: "The judge shall submit to the jury a special verdict as to punitive damages or, if the case is tried to the court, the judge shall issue a special verdict as to punitive damages."

¶ 33. Kraft makes several other arguments in direct response to arguments advanced by Winkelman. Because we are not embracing Winkelman's positions on these points, we do not address Kraft's responses, with one exception. Kraft argues that, under "Winkelman's view . . . some arbitrators have the power [to award punitive damages] and others do not; it just depends what each arbitrator decides. This simply cannot be the law." We reject Kraft's subtle mischaracterization of Winkelman's position, which is now also our conclusion.

¶ 34. We have concluded that nothing in Wisconsin law precludes arbitrators from awarding punitive damages if the parties' agreement (or the rules they adopt under it) so permit. Some parties, however, may opt in their arbitration agreements to withhold from arbitrators the authority to award punitive damages. Thus, in that sense, some arbitrators will have the power to award punitive damages, and others will not, depending on the provisions of the parties' agreement. That is indeed the law as we have interpreted it. Moreover, although we agree with Kraft's contention that, under a given agreement, properly construed, an arbitrator either will or will not have the authority to award punitive damages, some arbitrators may conclude that they have the authority under the agreement to award punitive damages, while others may reach the opposite conclusion. A court should uphold both determinations, although one is plainly wrong, so long as neither represents a "perverse misconstruction or positive misconduct" on the part of the arbitrator. That is also the law. *See Madison Prof'l Police Officers Ass'n,* 144 Wis. 2d at 586 (citation omitted).

¶ 35. Finally, Kraft argues that Winkelman waived the Federal Arbitration Act preemption argument that he advances on appeal because he neither made it to the arbitrator nor timely raised it in the circuit court. Because we have determined that the circuit court should not have vacated the arbitrator's award of attorney fees and punitive damages on the grounds that the arbitrator exceeded her powers, we need not address either Winkelman's federal preemption argument or Kraft's contention that it was waived. Similarly, because we are restoring the arbitrator's award of punitive damages, we do not address whether a party may seek punitive damages in circuit court after obtaining compensatory damages, but not punitive damages, from an arbitrator.

## Kraft's Cross-Appeal

¶ 36. We turn next to Kraft's cross-appeal. Kraft's basic premise is that the arbitrator's decision to award Winkelman punitive damages, and to a lesser extent, her award of attorney fees, was so clearly violative of Wisconsin law that it shows that the arbitrator was simply out to punish Kraft, regardless of the merits of Winkelman's claim. The arbitrator's alleged animosity toward Kraft, in Kraft's view, pervades her entire decision, and thus, we must vacate all aspects of the award, including the compensatory damages that the circuit court confirmed. Lest it be said that we have overstated Kraft's argument, the following are examples of Kraft's statements regarding the arbitrator and her decision: "It is evident from the Award that the Arbitrator simply hated Kraft."; "Here is an arbitrator run amok."; and, "The only malicious act that can reasonably be gleaned from the Arbitrator's award is her irrational contempt for Kraft . . . ."

¶ 37. Kraft's overheated rhetoric is unsupported by the record and detracts from the substance of its argument that the arbitrator perversely misconstrued or ignored Wisconsin law, and that she "dispensed her own brand of justice," by awarding Winkelman punitive damages and attorney fees. We note that, despite its assertions regarding the arbitrator's improper motives, Kraft does *not* assert that "there was evident partiality or corruption on the part of the arbitrator[]," one of the statutory grounds for setting aside the award. *See* Wis. Stat. § 788.10(1)(b). Moreover, Kraft acknowledges that, had the arbitrator awarded only compensatory damages, it would be hard pressed to argue that the award should be vacated, given the deferential standard for judicial review of arbitration awards. We conclude that, under the "hands off" standard for our review, which Kraft acknowledges we must employ, the arbitrator's award must be confirmed in its entirety.

¶ 38. We have already noted the showings required in order for a party to obtain attorney fees under Wis. Stat. § 100.18 and punitive damages under Wis. Stat. § 895.85. We, like the circuit court, can find no basis in the record to conclude that the arbitrator did "run amok" by determining that Kraft intentionally disregarded Winkelman's rights by failing to properly train its agent and by responding defiantly to Winkelman's claim that he had been misled regarding his ability to opt out of the pricing contract for a minimal penalty.[4] Because it is not our role to decide de

---

[4] Although the circuit court vacated the punitive damages and attorney fees awards because it concluded the arbitrator lacked authority to award them, the court stated that, if the arbitrator had possessed the requisite authority, it would have affirmed both awards: "Given the deference that arbitrators are accorded, in the event that I find the arbitrator has legal

novo whether the arbitrator correctly interpreted and applied the law in resolving this dispute, we will not engage in a point-by-point discussion of Wisconsin law regarding punitive damages. Unless we can conclude that the arbitrator was not only wrong, but that her decision evinces fraud, corruption, or bias on her part, or that she perversely construed or manifestly disregarded controlling law, we must uphold her awards. *See Madison Prof'l Police Officers Ass'n,* 144 Wis. 2d at 586. As we have stated, nothing in the arbitrator's decision, the record before us or Kraft's arguments convinces us that any of these standards have been breached.

¶ 39. Kraft again emphasizes in its cross-appeal brief the fact that, in none of six other arbitrations involving claims similar to Winkelman's did an arbitrator award punitive damages or attorney fees, and that "one arbitrator denied any compensatory damages to the claimant, another arbitrator reduced compensatory damages by 30% and the remaining arbitrators awarded full compensatory damages." We agree with Winkelman that what other arbitrators decided to award based on other evidentiary records has no bearing on whether the arbitrator in Winkelman's case stepped outside the wide boundaries within which arbitrators are permitted to act without judicial interference. We also concur with Winkelman's observation that the fact that compensatory damages were awarded in five of the other six cases shows that this arbitrator's conclusion that Winkelman's misrepresentation claim was meritorious was not unreasonable.

authority as to punitive damages and/or legal authority as to actual attorneys' fees, I have no problem whatsoever with the amounts that she awarded."

¶ 40. Finally, we note that Kraft successfully opposed a request to consolidate Winkelman's claim with the several other similar claims that apparently resulted in lesser awards. The disparate outcomes of the seven arbitrations are thus largely a consequence of Kraft's own making. An entity that includes an unlimited arbitration clause in its standard-form contracts runs the risk of having to accept disparate outcomes in the resolution of similar disputes, as well as forfeiting the opportunity for substantive judicial and appellate review of those outcomes.

¶ 41. Because we conclude that all aspects of the arbitrator's decision are to be confirmed, we need not address Kraft's final argument that the circuit court erred by confirming the award in part and vacating it in part. On remand, judgment shall be entered in Winkelman's favor for all amounts awarded him in arbitration.

## Attorney Fees for Court Proceedings

¶ 42. Winkelman requests that we direct the circuit court on remand to determine and award him reasonable attorney fees for the proceedings in the circuit court and on appeal, which he claims were necessary in order for him to obtain from Kraft the amounts the arbitrator awarded. In support, Winkelman cites *Radford v. J.J.B. Enterprises., Ltd.*, 163 Wis. 2d 534, 551, 472 N.W.2d 790 (Ct. App. 1991), where we held that "a party who prevails on appeal in an intentional misrepresentation case brought under sec. 100.18 is likewise entitled to reasonable appellate attorney's fees." He points out, as well, that the Massachusetts Supreme Court, in upholding an arbitrator's award of punitive damages and attorney fees against a

party found to have violated a statute prohibiting "unfair and deceptive acts and practices," directed that the prevailing party "may request appellate legal fees and costs" on remand. *See Drywall Sys., Inc., v. ZVI Constr. Co., Inc.*, 761 N.E.2d 482, 484, 490 (Mass. 2002).

¶ 43. In response, Kraft argues simply that our holding in *Radford* is not "broad" enough to support Winkelman's request here because the arbitrator in this case found that its agent had not intended to mislead Winkelman, and because "[t]his was a simple contract dispute involving the right of a party to cancel a contract." Although we do not embrace Kraft's arguments, we conclude that Winkelman is not entitled to attorney fees incurred during the litigation over the validity of the arbitration award.

¶ 44. Unlike the plaintiff in *Radford*, Winkelman is *not* "a party who prevail[ed] on appeal *in an intentional misrepresentation case brought under sec. 100.18." Radford*, 163 Wis. 2d at 551 (emphasis added). Winkelman commenced this action under WIS. STAT. § 788.09 to confirm an arbitration award. The litigation in the circuit court and on appeal had little to do with the arbitrator's determination that Kraft's agent induced Winkelman to enter into the pricing contract by misrepresenting its terms. Kraft has essentially conceded that the arbitrator's decision to award Winkelman compensatory damages on his misrepresentation claim would be virtually impervious to attack on judicial review had the arbitrator not chosen to also award punitive damages and attorney fees. In short, the dispute that the parties litigated in the circuit court and this one was not whether Kraft had violated WIS. STAT. § 100.18, but whether the arbitrator had exceeded her powers or blatantly failed to follow established Wisconsin law in making the awards that she did.

¶ 45. Thus, neither we nor the circuit court have determined whether Kraft indeed violated WIS. STAT. § 100.18; our conclusion being only that the arbitrator did not breach any of the statutory or common-law standards that would permit a court to vacate the award in whole or in part. Because neither the parties' agreement nor WIS. STAT. § 788.09 authorizes an award of attorney fees to a party who prevails in an action to confirm an arbitration award, we conclude that there is no contractual or statutory basis for us to direct that Winkelman recover from Kraft his post-arbitration attorney fees.

## CONCLUSION

¶ 46. For the reasons discussed above, we affirm the appealed judgment insofar as it confirms the arbitrator's award of compensatory damages and arbitration costs, but we reverse to the extent that it failed to confirm the awards of punitive damages and attorney fees. On remand, judgment shall be entered in Winkelman's favor for all amounts awarded him by the arbitrator, together with interest on those amounts to which Winkelman may be entitled,[5] and together with his allowable costs, but not actual attorney fees, incurred during this litigation. Because Winkelman has prevailed in both his appeal and Kraft's cross-appeal, he is entitled to his costs on appeal. *See* WIS. STAT. RULE 809.25(1).

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

---

[5] Neither party has raised in this appeal any issue regarding whether, at what rate or from what dates interest may be awarded in the judgment on the amounts the arbitrator awarded.

¶ 47. DYKMAN, J. (*concurring in part; dissenting in part*). I agree with all but paragraphs 41 through 45 of the majority opinion. But because the majority's analysis of the issue of attorney fees for court proceedings contradicts the rationale it adopts to affirm the arbitrator's award of attorney fees for the arbitration, I cannot agree with its conclusion that Winkelman may not recover his attorney fees in the circuit court and here.

¶ 48. I believe that the majority gets it exactly right when it concludes that the arbitrator could reasonably rely on the American Arbitration Association (AAA) rules agreed to by the parties and WIS. STAT. § 100.18(11)(b) (2003–04)[1] to award attorney fees for the arbitration proceeding. The majority notes:

> [The arbitrator's] authority to award the fees thus derived from the parties' contract and the rules it adopted, not directly from the statute itself. The only role the statute played was to demonstrate that Wisconsin substantive law authorizes attorney fees to be awarded when a party is induced by another's misrepresentations to enter into a contract.
>
> .... Here, as we have explained, the parties' contract, via the rules it adopts, permits an attorney fees award if "authorized by law." In this case, that authority is supplied by WIS. STAT. § 100.18, which in turn also satisfies the exception to the American Rule allowing fee shifting if a statute provides for it."

Majority at ¶¶ 17–18.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 49. This is not a surprising result. Courts have been affirming arbitration awards for many years. One can think of few areas of law with a more deferential review than an appeal of an arbitrator's award.

¶ 50. But the majority changes from a deferential review to a de novo review when deciding whether attorney fees should be awarded for the court proceedings brought to confirm or set aside the arbitrator's award. Why this change? The majority's reason seems to be that the big issue in court was whether the arbitrator had exceeded her powers while the issue of Kraft's violation of WIS. STAT. § 100.18 was only peripheral.

¶ 51. The portions of the majority's decision I have quoted in ¶ 48 show that the two issues are inextricably intertwined. Yet, the majority suggests that the court litigation had little to do with the arbitration litigation. The parties spent more time arbitrating Kraft's liability for damages than on its liability for attorney fees. But that is always the case in attorney fee litigation whether in court or at an arbitration proceeding. The substantive issues were factual, and necessitated witnesses. The attorney fee issue was legal and was briefed. It is no surprise that the parties may have spent more time on the factual issues than on the legal ones. But even that is open to question. Kraft claimed that the issues arbitrated were "straightforward, uncomplicated and did not require an army of lawyers, especially in view of the amount claimed."

¶ 52. Ultimately, the majority concludes that because neither the parties' agreement nor WIS. STAT. § 788.09 authorizes post-arbitration attorney fees, Winkelman cannot recover them. That is a red herring. The question is not which statutes do *not* authorize post-arbitration attorney fees, but which statute does.

The arbitrator answered that question by observing that the parties' contract provided that they would arbitrate disputes under AAA rules. She noted that AAA rules provided that she should provide a full and complete remedy if a statute permitted the award of attorney fees. She found that WIS. STAT. § 100.18 permitted the award of attorney fees in a case such as this.[2] The majority and I have concluded that this rationale permitted the arbitrator to award attorney fees for the arbitration proceeding. Why the flip-flop on post-arbitration attorney fees? If the parties' agreement and WIS. STAT. § 100.18(11)(b) do not distinguish between arbitration and post-arbitration fees, why should we?

¶ 53. There is a logical disconnect in concluding that because more time was spent during arbitration on substantive issues than on litigating attorney fee liability, attorney fees spent appealing the attorney fee issue cannot be awarded for fees incurred in the circuit court and here. Had the arbitration proceeding been a circuit court trial, such a distinction would be without precedent. *See First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 539–41, 335 N.W.2d 390 (1983) (allowing attorney fees for all issues, including fees for appeal, where two of the issues were substantive and one pertained to attorney fees).

---

[2] WISCONSIN STAT. § 100.18(11)(b) provides in pertinent part:

> Any person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent jurisdiction and shall recover such pecuniary loss, together with costs, including reasonable attorney fees, except that no attorney fees may be recovered from a person licensed under ch. 452 while that person is engaged in real estate practice, as defined in s. 452.01(6).

¶ 54. There is no reason why the rule should be different for cases starting with arbitration than for cases arising in circuit court. Either way, there must be a statute or a contract which provides for fee shifting. The arbitrator concluded that the parties' contract, coupled with AAA rules and WIS. STAT. § 100.18, met that test, and awarded fees to Winkelman. Though the majority accepts the arbitrator's reasoning and permits the award of attorney fees for the arbitration proceeding, it rejects the same reasoning for circuit court and appellate fees.

¶ 55. The correct answer to the attorney fee issue is that there is no liability for attorney fees in the arbitration proceeding, in the circuit court or in this court, unless a statute or the parties' contract so provides. *Milwaukee Teachers' Educ. Ass'n v. Milwaukee Board of School Directors*, 147 Wis. 2d 791, 797–98, 433 N.W.2d 669 (Ct. App. 1988). Since this is an arbitration case, the arbitrator is the fact and law finder, absent a perverse misconstruction. For me, that leaves us with two alternatives. We can conclude that the reasoning the arbitrator applied to award attorney fees necessarily applies to attorney fees in the circuit and appellate courts. Or, we can conclude that because the parties' contract is the wellspring from which liability for attorney fees arises, the arbitrator should decide whether Kraft is liable for Winkelman's circuit court and appellate attorney fees. The court chose the latter procedure as to continued testimony in *Gallagher v. Schernecker*, 60 Wis. 2d 143, 149–50, 208 N.W.2d 437 (1973), and I would do the same here. Kraft and Winkelman's contract governs the issue, and they agreed that the arbitrator would make decisions such as this one.

¶ 56. The majority's result is unnecessary, and unfortunate for Wisconsin farmers and others who sell commodities to organizations capable of litigating until the cows come home. Even if a contract would permit the majority's result, the advice any attorney will give to a farmer is: "Don't litigate, don't arbitrate. You can't win. Even if your contract is identical to John Winkelman's and you were deceived by the commodity purchaser, attorney fees for circuit court and appellate litigation will exceed any recovery you might obtain. Forget it."

¶ 57. I would remand to the circuit court with directions to remand to the arbitrator to decide the circuit court and appellate attorney fee issue. Because I agree with much of the majority's opinion and disagree only as to its treatment of attorney fees in circuit court and on appeal, I respectfully concur in part and dissent in part.